[No. 13141-6-III. Division Three. January 12, 1995.]

TRUCK INSURANCE EXCHANGE OF THE FARMERS INSURANCE GROUP, *Respondent*, v. CENTURY INDEMNITY COMPANY, *Appellant*.

*Richard A. Lee* and *Bodyfelt, Mount, Stroup & Chamberlain,* for appellant.

*David A. Thorner, Blaine T. Connaughton,* and *Thorner, Kennedy & Gano,* for respondent.

MUNSON, J. — Century Indemnity Company appeals a summary judgment dismissing all of its claims against Truck Insurance Exchange of the Farmers Insurance Group (Truck). Century contends as excess insurer it is equitably subrogated to its insured, Wilbur Ellis Company (WEC), and is entitled to assert WEC's claims against Truck for breaching its contractual duty to pursue litigation after judgment was entered. Century contends Truck acted negligently or in bad faith in managing litigation and failing to settle the case. Century also contends Truck owed it a direct duty to act in good faith and without negligence. Finally, Century contends the court erred in finding it was equitably estopped from asserting these claims.

The present lawsuit arises from Truck's handling of the defense of its insured, WEC. In August 1984, WEC informed its primary liability insurer, Truck, that Jerome Fox was claiming herbicides provided by WEC had caused damage to his apple crop. In 1985, Mr. Fox filed his complaint against WEC in Grant County Superior Court. Truck retained attorney Robert Tenney to defend WEC.

WEC had excess liability insurance provided by Century. Truck provided primary aggregate coverage of $500,000.[1] Adjuster Tom Emery monitored the progress of the Fox claim on behalf of Century. Mr. Emery first contacted Truck's representative, Bob Chester, in February 1988.

In July 1987, Mr. Tenney advised Truck the damages could be "tremendous". By May 1988, Mr. Emery had concluded a damage award could go as high as $1 million, and it was virtually certain WEC would be found liable. In the summer of 1988, Mr. Tenney told Mr. Chester there was a 50 percent chance WEC would be found liable.

In September 1988, Mr. Fox's attorney offered to settle his claim for about $3.5 million. Mr. Tenney advised Truck he believed a likely outcome of trial would be an award of

---

[1]Because of other claims against this policy, only $166,000 remained to be applied by Truck to Mr. Fox's claim.

damages in the range of $500,000 to $1,500,000. Truck did not respond to the settlement offer. On October 14, Mr. Tenney advised Truck that expert witnesses for WEC would reduce Mr. Fox's damages amount from $6.4 million to about $4.7 million, but that potential damages were still "astronomical". [2]

Shortly before trial began, Mr. Emery asked Mr. Chester if Truck would release its limits and allow Century to negotiate with Mr. Fox's lawyers. Century was prepared to offer up to $1 million to Mr. Fox if Truck would release its limits. Truck did not do anything.

Trial commenced in February 1989. Mr. Fox's attorney approached Mr. Emery during trial asking for a settlement offer from the defense. On March 27, Mr. Emery urged Mr. Tenney and Mr. Chester to make a settlement. No offer was made. The jury determined damages totaled $6,013,056.36, but found Mr. Fox was 53.5 percent contributorily negligent and returned a net verdict of about $2.8 million to Mr. Fox.

Mr. Tenney recommended pursuing posttrial relief from the judgment. On April 26, Truck tendered its limits ($166,000) and withdrew from the defense. Century retained Mr. Tenney and ultimately negotiated a settlement with Mr. Fox for $2.1 million. Mr. Fox's attorney told Century's Anthony Tirdell she could have settled the case earlier for much less, possibly as little as $500,000.

Century sued Truck to recover the costs of continuing the WEC litigation from the time Truck withdrew until the final settlement was negotiated, for damages caused by Truck's negligence and failure to act in good faith to pursue settlement negotiations with Mr. Fox, and for violation of the Consumer Protection Act (CPA). The trial court granted Truck's motion to dismiss the claims on summary judgment.

Century contends it is equitably subrogated to any claims WEC may have against Truck.

■■ Equitable subrogation is a legal fiction whereby a person who pays a debt for which another is primarily respons-

---

[2]Truck set up a reserve of $5,000, which was later increased to $100,000.

ible is subrogated to the rights and remedies of the other. *See Newcomer v. Masini*, 45 Wn. App. 284, 286, 724 P.2d 1122 (1986). An excess insurer is subrogated to the rights of its insured to recover on claims the insured has against the primary insurer. *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 9, 665 P.2d 887 (1983). As *Millers*, at 14, pointed out, "Denying subrogation . . . could encourage primary insureds to hold out making payments and hope an excess insurer pays first; such a result is obviously undesirable."

Other jurisdictions have noted application of equitable subrogation to excess carrier's claims against primary insurers furthers policies of encouraging reasonable settlements of lawsuits, preventing unfair distribution of losses among primary and excess insurers, preventing primary insurers from obstructing settlements in bad faith, and reducing the premiums paid for excess coverage. *Certain Underwriters v. General Accident Ins. Co. of Am.*, 909 F.2d 228, 231 (7th Cir. 1990); *Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co.*, 164 Ariz. 286, 290-91, 792 P.2d 749, 753-54 (1990); *American Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 483 (Tex. 1992).

Century contends Truck breached several duties owed to the insured.

First, Century contends it is entitled to recover from Truck the cost of postjudgment litigation up to the time the WEC case was settled.

An excess insurer has no duty to defend until the primary insurer has exhausted its obligation and is entitled to reimbursement for costs incurred in assuming the defense. *United States Fire Ins. Co. v. Roberts & Schaefer Co.*, 37 Wn. App. 683, 683 P.2d 600 (1984); *Farmers Home Mut. Ins. Co. v. Insurance Co. of N. Am.*, 20 Wn. App. 815, 583 P.2d 644 (1978), *cert. denied*, 442 U.S. 942 (1979). If this were not so, the primary carrier would profit from its wrongful failure to defend. *Farm & City Ins. Co. v. United States Fid. & Guar. Co.*, 323 N.W.2d 259 (Iowa 1982).

The issue presented here is whether the primary insurer's duty to defend includes an obligation to pursue posttrial remedies. No Washington case has addressed this issue.

 Other jurisdictions have held an insurer owing a duty to defend its insured is liable for the costs of prosecuting an appeal from a judgment against its insured provided there are reasonable grounds for the appeal. *Cathay Mortuary (Wah Sang) Inc. v. United Pac. Ins. Co.*, 582 F. Supp. 650, 656 (N.D. Cal. 1984) (and cases cited therein); *see Aetna Ins. Co. v. Borrell-Bigby Elec. Co.*, 541 So. 2d 139 (Fla. Dist. Ct. App. 1989); *Reichert v. Continental Ins. Co.*, 290 So. 2d 730 (La. Ct. App. 1974); *Kaste v. Hartford Accident & Indem. Co.*, 5 A.D.2d 203, 170 N.Y.S.2d 614 (1958).

*Reichert* predicated the duty to prosecute an appeal on the fiduciary relationship between the insurer and insured:

> [A]s the insured's defender, the insurer has contractually assumed the role of the champion of the insured's rights. The duty thus undertaken is in the nature of a fiduciary relationship in which the rights of the insured are deemed paramount. Having undertaken, for a price, to defend the insured, the insurer must provide a meaningful defense. . . . Where there appears reasonable grounds that a substantial interest of the insured may be served or protected by appeal, insurer owed the duty to appeal. . . . For obvious reasons, the ultimate success or failure of an appeal may not constitute the criteria for determining whether or not reasonable grounds existed for taking an appeal. In such instances, the pivotal issue is whether reasonable grounds for taking an appeal to protect a substantial right of the Insured existed at the conclusion of trial on the merits.

*Reichert*, at 734.

*Borrell-Bigby*, construing policy language identical to the language in Truck's policy, reasoned because the duty to defend is broader than the duty to indemnify, the insurer must establish the validity of a judgment against the insured before paying its policy limits and abandoning the defense. Because an insurance contract is to be construed against the insurer, the contractual duty to defend includes the duty to appeal unless the insurance policy expressly exempts the insurer; this reasoning applies equally to other posttrial remedies. *Cathay Mortuary*, at 655-56.[3]

---

[3]We note a minority view that an insurer is liable for failure to pursue an appeal only if it acts fraudulently or in bad faith. *Hawkeye-Sec. Ins. Co. v. Indemnity Ins. Co. of N. Am.*, 260 F.2d 361, 69 A.L.R.2d 684 (10th Cir. 1958). As we base our reasoning on the insurer's duty to act in good faith, we decline to adopt the rule as stated in *Hawkeye.*

Washington law recognizes this fiduciary relationship between insurer and insured. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986). Although Washington has never adopted a rule requiring the insurer to provide an appeal where there are reasonable grounds to do so, Washington has recognized that the duty to defend is broader than the duty to indemnify, and insurance policy language is construed in favor of the insured and against the insurer. *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 856 P.2d 1095 (1993); *Viking Ins. Co. v. Hill*, 57 Wn. App. 341, 787 P.2d 1385 (1990). Thus, the reasoning of *Borrell-Bigby* and *Cathay Mortuary* supports our adoption of the rule that where there are reasonable grounds to believe a substantial interest of the insured may be served or protected thereby, absent an express provision to the contrary, the insurer's duty to defend includes the duty to seek postjudgment relief.

After judgment was entered against Truck's insured, defense counsel indicated there was reason to believe posttrial relief should be pursued and the jury instruction on damages provided a "fertile area for appeal". Truck's liability claims manager opined: "There does not appear to be any basis for appeal." The evidence is sufficient to create a genuine issue of fact as to whether reasonable grounds existed for pursuing postjudgment remedies. Summary dismissal of the claim for the cost of postjudgment motions was error.

■ Century also contends Truck breached its duty to manage the defense in good faith, including the duty to investigate and evaluate, negotiate possible settlement, and keep Century informed. The fiduciary relationship between the insurer and the insured creates a duty on the part of the insurer to act in good faith in conducting the insured's defense. *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 473 P.2d 193 (1970). "The insurer is not free to proceed through negotiation and defense stages of litigation safeguarding only its own interests and neglecting those of its insureds." *Weber v. Biddle*, 4 Wn. App. 519, 525, 483 P.2d 155 (1971). An excess insurance carrier is subrogated to the rights of the insured;

thus in these circumstances, the excess carrier is entitled to have the primary carrier act in good faith. *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 512 (9th Cir. 1984); *Continental Cas. Co. v. United States Fid. & Guar. Co.*, 516 F. Supp. 384, 387, 390 (N.D. Cal. 1981).

■ ■ The primary insurer has a duty to diligently investigate and evaluate the claim. *Weber*, at 521-22; *Tyler*, at 179; *Bohemia*, at 510. If investigation discloses a likelihood the insured is liable, the insurer has an affirmative duty to make a good faith effort to settle the case. *Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 791-92, 523 P.2d 193 (1974). This includes "an obligation at least to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available and make an informed evaluation of the settlement demand." *Continental*, at 389; *see Tyler*, at 179. The insurer's duty to act in good faith requires it to evaluate settlement offers as though it bore the entire risk, including any judgment in excess of the policy limits. *Bohemia*, at 512; *Continental*, at 387. When a settlement offer exceeds the primary insurer's policy limits, the insurer must communicate the offer to its insured, ascertain whether the insured is willing to make the necessary contribution to the settlement amount, and must exercise good faith in deciding whether to pay its own limits. *Continental*, at 387-88.

There is evidence Mr. Tenney advised Truck of the likelihood of a substantial damages award against WEC, although there is also evidence he questioned whether WEC would be found liable. There is evidence Mr. Fox's attorneys would have considered an offer of less than $1 million, and Century would have been willing to make the necessary contribution to the settlement amount. Thus, a trier of fact could find Truck breached its duty to make a good faith effort to settle the case. The evidence is sufficient to present a triable issue of fact. Dismissal of Century's second cause of action on summary judgment was error.

Century contends the court erred in dismissing its consumer protection claim. Truck argued the CPA does not create a cause of action by third parties to enforce insurance

regulations, citing *Tank; Rice v. Life Ins. Co. of N. Am.*, 25 Wn. App. 479, 609 P.2d 1387, *review denied*, 93 Wn.2d 1027 (1980); and *Green v. Holm*, 28 Wn. App. 135, 622 P.2d 869 (1981). In both *Tank* and *Rice*, the CPA claim was asserted by a third party rather than by someone subrogated to the rights of the insured. The reasoning in those cases is inapplicable here. Neither the parties nor the trial court has addressed the issue of whether an excess insurer which is equitably subrogated to the rights of its insured may assert a CPA claim which the insured could have made against the primary insurer. The trial court's dismissal of the CPA claim is reversed to allow the issue to be presented in the superior court.

 Century also urges this court to hold the primary insurer owes to the excess insurer a direct duty of reasonable care in the defense and settlement of claims. While most courts have adopted the theory of equitable subrogation, only a minority have found the primary insurer owes a direct duty of good faith to the excess insurer. *See Kaste v. Hartford Accident & Indem. Co.*, 5 A.D.2d 203, 170 N.Y.S.2d 614 (1958). Under the theory of equitable subrogation, an excess insurer's claims against the primary insurer are subject to any defenses the primary insurer could assert against an insured, including, for example, a refusal to settle or failure to cooperate. *American Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 483 (Tex. 1992). We decline to recognize a cause of action against the primary insurer which might give the excess insurer greater rights than the insured would have. Century has an adequate remedy through equitable subrogation.

Century contends the court erred in granting Truck's motion for summary judgment on the basis of the equitable estoppel argument first raised in Truck's reply brief.[4] If one party makes a statement on which the other party acts in reliance, the first party may be equitably estopped from con-

---

[4]It is error for the trial court to grant summary judgment based on an issue first raised in the nonmoving party's reply brief. *White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 810 P.2d 4 (1991).

tradicting or repudiating the statement relied upon. *Emrich v. Connell*, 105 Wn.2d 551, 716 P.2d 863 (1986).

Truck claims it defended WEC in reliance on Century's failure to require or authorize settlement, and Century should not be permitted to complain of Truck's failure to settle.[5] The evidence does not show Mr. Chester relied on Century's statements or actions in deciding whether to pursue settlement negotiations. Indeed, there is evidence Century urged Truck to pursue settlement. Century is not equitably estopped from claiming Truck breached its duty to act in good faith with respect to settlement negotiations.

Reversed and remanded for trial on all claims.

SWEENEY, A.C.J., and SCHULTHEIS, J., concur.

Review denied 127 Wn.2d 1002 (1995).

---

[5]Truck provided Century with information about developments in the case and, at Century's suggestion, conducted a mock trial to assess how a jury would respond to various issues in the case.