[No. 13763-5-III.   Division Three.   May 2, 1995.]

LEONARD REES, ET AL, *Appellants*, v. VIKING INSURANCE COMPANY, *Respondent*.

---

*Aaron L. Lowe,* for appellants.

*Erika Balazs* and *Lukins & Annis,* for respondent.

SWEENEY, J. — Leonard and Waneita Rees were both injured in an automobile collision on May 5, 1991. The other driver involved in the accident was Frank Romish. At the time of the accident, Mr. Romish was operating a pickup truck owned by Leroy Pitts. Mr. Pitts had $500,000 of liability insurance covering the pickup, with Transamerica Insurance Company. The policy covered permissive drivers and, therefore, Mr. Romish. Mr. Romish also carried $50,000 of liability coverage with Viking Insurance Company. Mr. Pitts' policy with Transamerica was primary; Mr. Romish's policy with Viking was excess.[1]

---

[1]*Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 9, 12, 665 P.2d 887 (1983).

The Reeses sued Mr. Pitts, Mr. Romish, and their respective spouses for damages. The Reeses then settled with the Romishes, the Pittses and Transamerica for $421,250, $78,750 less than the $500,000 coverage afforded by the Transamerica policy. On December 10, 1992, the Reeses executed a release and hold harmless agreement releasing the Pittses, the Romishes, and Transamerica of any further claims for "a Stipulated Release in the amount of Six Hundred Thousand Dollars ($600,000)". As part of the settlement, the Reeses also executed, on December 9, 1992, a covenant agreeing not to execute against the Pittses, the Romishes, or Transamerica for the unpaid portion of settlement, $178,750 (the difference between $600,000, the stipulated settlement amount, and the actual settlement payment, $421,250). The Pittses and the Romishes then assigned any claims against Viking to the Reeses. The Reeses demanded payment from Viking of Mr. Romish's policy limits, $50,000.

Viking rejected the Reeses' demand for payment of the $50,000 excess coverage. The Reeses then obtained an order approving the "reasonableness of settlement pursuant to RCW 4.22.060". The order was entered on June 23, 1993, more than 6 months after the settlement agreement was executed. The Reeses then filed a declaratory judgment action against Viking claiming the right to payment of the $50,000. Both Viking and the Reeses moved for summary judgment. The trial court granted Viking's motion, dismissing the Reeses' action. They appeal.

## DISCUSSION

The Reeses' argument begins with the assumption that Viking is a tortfeasor because it breached its duty to defend Mr. Romish. From this premise, they argue that, because Viking was a tortfeasor, RCW 4.22.060(2)[2] allows them to proceed against Viking as an additional tortfeasor, notwithstanding their settlement with and release of the Pittses and the Romishes.

---

[2]RCW 4.22.060(2) provides in part:

"A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides."

■ Their assumption is in error. An excess carrier's obligation to pay and defend begins when, and only when, the limits of the primary insurance policy are exhausted. *Truck Ins. Exch. v. Century Indem. Co.*, 76 Wn. App. 527, 531, 887 P.2d 455 (1995). Viking had no obligation to defend unless, and until, Transamerica's policy limits were fully exhausted. Those policy limits were never exhausted; therefore, the duty to defend or indemnify never arose.

■ The Reeses contend that Viking is bound by the $600,000 settlement agreement with Transamerica and its insureds because the trial court found the agreed upon settlement amount to be reasonable. Even assuming for the sake of this discussion that Viking could be construed to be a tortfeasor, the findings made at the reasonableness hearing would not be binding on Viking. *See Price v. Kitsap Transit*, 125 Wn.2d 456, 467, 886 P.2d 556 (1994) (the court finds a given settlement is reasonable as among the parties before the court and given the facts presented).

The Reeses also compare their situation to a first party insured recovering underinsured motorists (UIM) coverage. *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 727, 733 P.2d 213 (1987); *Abbott v. Public Employees Mut. Ins. Co.*, 50 Wn. App. 313, 316, 748 P.2d 270, *review denied*, 110 Wn.2d 1026 (1988). The analogy, however, breaks down when the contractual relationship and policy underlying UIM coverage are considered. First, UIM coverage is first party coverage. There is a contractual relationship between the UIM carrier and its insured that is not present with third party liability coverage. Second, the purpose of UIM coverage is to provide "broad protection against financially irresponsible motorists". *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751, 600 P.2d 1272 (1979). The responsible driver here had $500,000 in liability coverage, $78,750 more than the Reeses were willing to accept in exchange for a covenant not to sue.

The agreement with Transamerica and its insureds to actually accept less than policy limits in settlement but "agree to settle" for a sum in excess of policy limits appears to be little more than an artifice designed to support a claim against Viking's excess policy. The Reeses argue that they

accepted $421,250 because the cost of going to trial would have exceeded $100,000. While that may be true, that kind of judgment call by lawyers and their clients is necessarily based on a number of considerations, not the least of which is their estimate of the value of the case, in front of a jury. An excess carrier should not be bound by that unilateral judgment call.

In sum, the Reeses with full knowledge of the consequences agreed to settle their claim against both the Defendants and their insurance carrier, Transamerica, for the sum of $421,250, a sum $78,750 less than the available primary limits. Having done so, they have no claim against the excess policy.

Affirmed.

THOMPSON, C.J., and MUNSON, J., concur.