50 P.3d 277 (2002)
Janice M. SMITH and Randal Smith, individually and as assignees, Appellants,
v.
SAFECO INSURANCE COMPANY and Linda Bryce, Respondents.
No. 26721-7-II.
Court of Appeals of Washington, Division 2.
July 19, 2002.
*279 David Beninger, Seattle, Patricia Anderson, Kirkland, for Appellants.
Richard S. Fallon, Seattle, for Respondents.
Robert Reinhard, Tacoma, for Bryce,
*278 MORGAN, J.
The main question in this case is whether an insurer breaches the duty of good faith that it owes to its insured (as opposed to a third party claimant) by not complying with the demand of a third-party claimant, made before any lawsuit is filed, for the disclosure of the insured's policy limits. The answer is no under the circumstances present here.
In April 1997, a car driven by Janice Smith[1] was rear-ended by a car driven by Linda Bryce. Smith was injured. Bryce had $100,000 of liability insurance through Safeco. Bryce disclosed her insurer but not her policy limits.
At a time not shown in the record, Smith retained counsel to assist her with claims "against Bryce/Safeco and, potentially, against the Smiths' own UIM carrier, Farmers Insurance."[2] Before doing that, as far as the record shows, Smith did not furnish Safeco with any information about her injuries.
After being retained, Smith's counsel did not make a written demand or otherwise describe Smith's claim in writing. On February 24, 1999, however, a "claims specialist" employed by Smith's counsel asserted to a Safeco adjuster, over the telephone, that Smith had a "closed head injury[,]" "loss of memory," medical bills "close to $20k," and past and future wage loss.[3]
On at least four occasions between August 1998 and March 1999, including the one on February 24, 1999, Smith demanded that Safeco disclose Bryce's liability limits. Safeco declined, pending receipt of written documentation concerning Smith's claim. It reasoned (1) that it did not "have enough *280 info[rmation] to believe the value of the demand exceeds our insured's liab[ility] limits[,]"[4] and (2) that it did not know whether Bryce would consent or object to such disclosure.[5]
On March 29, 1999, Smith sued Bryce. On May 17, 1999, Smith sent Safeco a written description of her claim and a demand for "full policy limits" if "less then [sic] $1.5 million[.]"[6] She asserted for the first time that "[s]pecial out of pocket damages alone exceed $612,000."[7] On May 26, 1999, Safeco told Smith that Bryce's applicable policy limit was $100,000. On July 30, 1999, Safeco paid that amount to Smith.
On September 22, 1999, Smith settled with Bryce. Bryce agreed to have "partial judgment entered against her in the amount of $100,000,"[8] and to assign her rights, if any, against Safeco. Smith gave Bryce a "covenant not to execute or enforce judgment."[9]
On October 19, 1999, Safeco filed a complaint for declaratory judgment against Bryce and Smith. It alleged that it had not disclosed Bryce's limits earlier because that "usually result[s] in a settlement demand for more than the policy limits or, in a time limits settlement demand[,]" and "[n]either of those is in the insured's best interest."[10] It further alleged that it "has not committed bad faith" and "is not bound by any Stipulated Judgment entered against Linda Bryce[.]"[11]
On January 19, 2000, Smith amended her personal injury complaint to add bad faith claims against Safeco. Acting in her own right and also as Bryce's assignee, she alleged that Safeco had breached its duty of good faith by "refus[ing] to disclose Linda Bryce[`s] liability policy limits[.]"[12] On July 12, 2000, the trial court consolidated Smith's personal injury action and Safeco's declaratory judgment action.
On August 25, 2000, the parties filed cross-motions for summary judgment on the issue of bad faith. On September 22, 2000, the trial court orally denied Smith's motion and granted Safeco's. On November 8, 2000, the trial court entered a written order. On December 5, 2000, Smith filed this appeal.
Smith now makes two claims on appeal. First, she claims that Safeco owed her a duty of good faith; that Safeco breached its duty to her, that Safeco's breach proximately caused harm to her, and that she is entitled to compensation. Second, she claims that Safeco owed Bryce a duty of good faith; that Safeco breached its duty to Bryce; that Safeco's breach proximately caused harm to Bryce; and that she is entitled to compensation as Bryce's assignee. While addressing both claims, we take the facts and inferences in the light most favorable to Smith.[13]

I.
Smith's first claim is easily dealt with. She asserts that "insurers owe a duty to third party claimants to cooperate with investigation of a claim, including disclosure of limits."[14] In Tank v. State Farm Fire & Cas. Co.,[15] however, the Washington Supreme Court held that "third party claimants may not sue an insurance company directly for alleged breach of duty of good faith under a liability policy."[16] Later cases hold likewise.[17] *281 Thus, Smith has no claim against Safeco in her own right.

II.
Smith's second claim requires more discussion. An insurer owes its insured a duty to act in good faith.[18] When the insured is likely to be found liable, this duty encompasses "an affirmative duty to make a good faith effort to settle[.]"[19] Depending on the particular facts and circumstances, this duty may also encompass duties to investigate in good faith, evaluate in good faith, and negotiate in good faith.[20]
An insurer breaches its affirmative duty to make a good faith effort to settle by negligently or in bad faith "failing to settle a claim against the insured within its policy limits."[21] Factors bearing on breach include but are not limited to "the strength of the injured claimant's case on the issues of liability and damages[;]" the adequacy of the insurer's investigation and evaluation; the adequacy of the insured's policy limits and the consequent "risk to which each party [insurer and insured] is exposed in the event of a refusal to settle[;]" willingness or refusal to negotiate and the resulting "climate for settlement;" and any other action by the insurer "demonstrat[ing] greater concern for the insurer's monetary interest than [for] the financial risk attendant to the insured's predicament."[22] At trial, the insured has the burden of proving breach.[23]
These principles can be applied on summary judgment. When an insurer moves for summary judgment in this context, it necessarily claims that a rational trier of fact could not find that the insurer breached its "affirmative duty to make a good faith effort to settle." To support such a claim, the insurer must show the reasons why it did what it did.[24] If, but only if, the insurer makes such a showing, the insured must produce evidence sufficient to support a finding that "there was no reasonable basis for the insurer's actions"[25]i.e., that the insurer's reasons never existed or were so "unreasonable, frivolous, or unfounded" that a reasonable person would have considered them not "fairly debatable."[26] This is a "heavy burden,"[27] but unless the insured meets it, *282 the insurer is entitled to summary judgment.[28]
Invoking the insurer's "affirmative duty" to its insured, Smith argues that the insurer in a "clear liability case"[29] must always comply with a third-party claimant's demand for the insured's policy limits, even when the demand precedes any lawsuit.[30] Confusingly, however, Smith fails to distinguish benefit to a third-party claimant from benefit to the insured. Although compliance may always benefit the third-party claimant, it may or may not benefit the insured, depending on the facts of the particular case for example, compliance will not benefit the insured if, under the particular circumstances, it will cause the claimant to increase his or her settlement demand. Accordingly, the facts of the particular case should determine whether an insurer must comply with a claimant's pre-filing demand for the insured's policy limits. In the absence of a statute or rule requiring disclosure,[31] and assuming that the insured does not direct otherwise,[32] the insurer must disclose the insured's policy limits if a reasonable person in the same or similar circumstances would believe that disclosure is in the insured's (as opposed to the claimant's) best interests. Conversely, the insurer need not disclose if a reasonable person would believe that disclosure is not in the insured's best interest, or if a reasonable person would not know, after reasonably marshalling the facts and evaluating the claim, whether disclosure was or was not in the insured's best interests.
The facts in this case are either unknown or essentially undisputed. From the outset, Safeco knew that Bryce had rear-ended Smith and that Bryce was likely to be found liable. The record does not suggest, nor does Smith contend, that Safeco investigated the accident negligently or in bad faith. The record does not suggest, nor does Smith contend, that Smith gave Safeco any information about her injuries before she retained counsel. The record does not suggest, nor does Smith contend, that Safeco contacted Smith directly after she retained counsel.[33] The record shows that Safeco was able to obtain very little information about Smith's injuries, and no documented information about Smith's injuries, after Smith retained counsel. On February 24, 1999, a "claims specialist" from the office of Smith's counsel asserted to a Safeco adjuster, over the telephone, that Smith had a "closed head injury," "loss of memory," medical bills "close to $20k," and past and future wage lossbut when the adjuster requested documentation, Smith refused to provide it until after Safeco revealed Bryce's policy limits.
Based only on this record, Smith cannot show, and a rational trier of fact could not find, that Safeco's failure to disclose was so "unreasonable, frivolous, or unfounded" as not to be "fairly debatable."[34] A reasonable person in Safeco's shoes would have deemed himself or herself to lack any reliable information on the nature of Smith's injuries or the size of her claim; such a person would not have relied on undocumented information asserted over the telephone, and he or she would have had nothing else. Lacking any reliable information, a reasonable person in Safeco's shoes would not have believed that *283 disclosure of Bryce's policy limits would serve Bryce's (as opposed to Smith's) interests. On the contrary, a reasonable person in Safeco's shoes simply would not have known whether the disclosure of Bryce's policy limits would help or hurt Bryce's interests. Smith cannot show that "there was no reasonable basis for [Safeco's] actions[,]"[35] and the trial court did not err by granting summary judgment.
Hoping to forestall this conclusion, Smith relies heavily on two cases from other states. One is Powell v. Prudential Property & Cas. Ins. Co.,[36] and the other is Boicourt v. Amex Assurance Co.[37]
In Powell, the trial court held that a bad-faith claim could not be predicated on the insurer's failure to disclose the insured's policy limits unless the claimant had made a formal offer to settle. The claimants not having made such an offer, the trial court granted the insurer's motion for summary judgment. Reversing, the Florida Court of Appeal held that the trial court was required to consider all the facts, not just one, and that all the facts warranted trial. We agree entirely. For the reasons already discussed, however, the facts of our case do not warrant trial.
In Boicourt, a statute barred the insurer from disclosing policy limits without the insured's permission. The insurer had a blanket rule never to contact its insured to seek such permission. The insurer moved for summary judgment on the ground that a bad-faith claim could not be brought unless there had been a formal offer to settle. The trial court agreed and granted summary judgment. Reversing, the California Court of Appeal concluded (1) "that a formal settlement offer is not an absolute prerequisite to a bad faith action[,]"[38] and (2) "that an insurer's blanket rule against contacting the policyholder to see if the policyholder wants the policy limits disclosed can be a basis for bad faith."[39] We agree with the first proposition for reasons already discussed. We do not consider the second proposition because Safeco did not have a blanket rule, and also because Washington does not have a non-disclosure statute like California's. We have no quarrel with Boicourt, but it does not help here.
Smith contends that Safeco did not make a good faith effort to reach Bryce and ask her permission to disclose. We reject this contention for at least two reasons. First, an insurer need not contact an insured every time a claimant so demands; rather, an insurer must contact an insured when, under the circumstances, contact is needed to protect the insured's interests.[40] Such circumstances did not exist here, in part because Smith had not documented her injuries. Second, Smith offers nothing even tending to suggest that Bryce would have consented to disclosure if contacted before Smith filed suit.
Smith contends that Safeco's refusal to disclose policy limits "delayed [her] ability to evaluate and pursue a UIM claim"[41] against her own carrier, Farmers Insurance Company. Although such delay would certainly concern her, she fails to explain, and we do not perceive, why it would concern Bryce. Thus, it seems immaterial to a claim that is based on Bryce's rights.
Citing Safeco Ins. Co. of America v. Butler,[42] Smith states that "Washington Courts have adopted a presumption of harm once bad faith has been established."[43] She *284 then concludes that the trial court erroneously failed to apply this presumption. Assuming that the presumption of harm applies to the type of bad faith claim in issue here, and not just to the type of bad faith claim at issue in Butler, we agree with her statement but not with her conclusion. The presumption of harm applies after bad faith is established,[44] and bad faith has not been established here.
Finally, Smith contends that Safeco acted in bad faith by forcing Smith to sue Bryce. That is a factor to be considered, but it certainly is not enough, by itself, to support a bad-faith claim. If it were, an insurer could never deny an injured person's claim without being liable to its insured for bad faith. Concluding that Smith has no claim against Safeco in her own right or as Bryce's assignee, we affirm the trial court's judgment.
Affirmed.
We concur: HOUGHTON, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] Smith's husband is also a party. For convenience, we refer only to her.
[2] Clerk's papers (CP) at 15.
[3] Id. at 60.
[4] Id. at 61; see also CP at 63.
[5] Between August 1998 and April 1999, Safeco was not in contact with Bryce. Safeco no longer insured Bryce, and Safeco did not have her current address. Smith argues that Safeco could have located Bryce with reasonable effort, and we will assume that is true.
[6] CP at 101.
[7] Id.
[8] Id. at 12.
[9] Id. at 13.
[10] Id. at 219.
[11] Id. at 220.
[12] Id. at 5.
[13] Ellwein v. Hartford Accident and Indem. Co., 142 Wash.2d 766, 775, 15 P.3d 640 (2001); Safeco Ins. Co. of America v. Butler, 118 Wash.2d 383, 394-95, 823 P.2d 499 (1992).
[14] Br. of Appellant at 38.
[15] 105 Wash.2d 381, 715 P.2d 1133 (1986).
[16] Tank, 105 Wash.2d at 391, 715 P.2d 1133.
[17] Neigel v. Harrell, 82 Wash.App. 782, 784-85, 919 P.2d 630, review denied, 130 Wash.2d 1021, 928 P.2d 415 (1996); Planet Ins. Co. v. Wong, 74 Wash.App. 905, 909-10, 877 P.2d 198, review denied, 125 Wash.2d 1008, 889 P.2d 498 (1994).
[18] RCW 48.01.030; Ellwein, 142 Wash.2d at 775, 15 P.3d 640; Industrial Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wash.2d 907, 916-17, 792 P.2d 520 (1990); Hamilton v. State Farm Ins. Co., 83 Wash.2d 787, 791, 523 P.2d 193 (1974); Griffin v. Allstate Ins. Co., 108 Wash. App. 133, 143, 29 P.3d 777 (2001), review denied, 45 P.3d 551 (2002); Besel v. Viking Ins. Co., 105 Wash.App. 463, 474-75, 21 P.3d 293, review granted, 144 Wash.2d 1016, 32 P.3d 283 (2001); Tyler v. Grange Ins. Ass'n, 3 Wash.App. 167, 173, 178, 473 P.2d 193 (1970).
[19] Truck Ins. Exchange of Farmers Ins. Group v. Century Indem. Co., 76 Wash.App. 527, 534, 887 P.2d 455, review denied, 127 Wash.2d 1002, 898 P.2d 308 (1995); see also WAC 284-30-330(6); Hamilton, 83 Wash.2d at 791-92, 523 P.2d 193 (insurer has duty "to make a good faith attempt to effect settlement[;]" insurer "may be held liable for damages to its insured for a failure to adjust or compromise a claim within the limits of liability, if that failure is attributable to negligence or bad faith"); Murray v. Mossman, 56 Wash.2d 909, 911, 355 P.2d 985 (1960); Evans v. Continental Cas. Co., 40 Wash.2d 614, 627-28, 245 P.2d 470 (1952); Burnham v. Commercial Cas. Ins. Co., 10 Wash.2d 624, 631, 117 P.2d 644 (1941); Besel, 105 Wash.App. at 474, 21 P.3d 293; Tyler, 3 Wash.App. at 172-73, 473 P.2d 193.
[20] See Tyler, 3 Wash.App. at 179, 473 P.2d 193.
[21] Tyler, 3 Wash.App. at 173, 473 P.2d 193 (citing Mossman, 56 Wash.2d at 911, 355 P.2d 985); see also Truck, 76 Wash.App. at 534, 887 P.2d 455; 16A DAVID K. DEWOLF AND KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 27.1 at 162 (2nd. Ed.2000).
[22] Tyler, 3 Wash.App. at 174, 179, 473 P.2d 193.
[23] Ellwein, 142 Wash.2d at 775, 15 P.3d 640.
[24] Cf. Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989) ("moving party bears the initial burden of showing the absence of an issue of material fact").
[25] Ellwein, 142 Wash.2d at 776, 15 P.3d 640 (emphasis in original).
[26] Ellwein, 142 Wash.2d at 775-77, 15 P.3d 640; see also Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 560, 951 P.2d 1124 (1998).
[27] Ellwein 142 Wash.2d at 775, 15 P.3d 640.
[28] Ellwein, 142 Wash.2d at 775-76, 15 P.3d 640.
[29] See, e.g., Br. of Appellant at 1. Smith offers no definition of this term, and we know of none that would suffice for all cases.
[30] Nothing in this opinion applies to disclosure of policy limits after a lawsuit is filed. That situation is controlled by CR 26(b)(2), which is not in issue here.
[31] Neither party cites any statute or rule that might apply here. Nor do we know of any.
[32] We assume, though we need not hold, that an insurer must comply with an insured's express direction on whether to disclose or withhold the insured's policy limits, unless (a) the law requires otherwise or (b) the claimant demanding such limits has a right of his or her own (as opposed to relying on the insured's right as the insured's assignee). We need not consider this matter, as Bryce gave no direction here.
[33] See WAC 284-30-330(19) (unfair practices in business of insurance include "[n]egotiating or settling a claim directly with any claimant known to be represented by an attorney without the attorney's knowledge and consent"); RPC 4.2.
[34] Ellwein, 142 Wash.2d at 775-77, 15 P.3d 640; see also Kirk, 134 Wash.2d at 560, 951 P.2d 1124.
[35] Ellwein, 142 Wash.2d at 776, 15 P.3d 640 (emphasis in original).
[36] 584 So.2d 12 (Fla.Dist.Ct.App.1991), review denied, 598 So.2d 77 (Fla.1992).
[37] 78 Cal.App.4th 1390, 93 Cal.Rptr.2d 763, review denied (2000).
[38] 78 Cal.App.4th at 1399, 93 Cal.Rptr.2d 763 (emphasis in original).
[39] 78 Cal.App.4th at 1400, 93 Cal.Rptr.2d 763 (emphasis in original).
[40] Just as the court in Boicourt declined to approve a rule that an insurer need not ever contact its insured, we decline to approve a rule that an insurer must always contact its insured.
[41] Br. of Appellant at 16.
[42] 118 Wash.2d 383, 823 P.2d 499.
[43] Br. of Appellant at 39 (emphasis added).
[44] Butler, 118 Wash.2d at 390, 823 P.2d 499 ("rebuttable presumption of harm once the insured meets the burden of establishing bad faith").