**Electronically Filed
Supreme Court
SCCQ-14-0000727
29-JUN-2015
10:56 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

ST. PAUL FIRE & MARINE INSURANCE COMPANY,
a Minnesota corporation, Plaintiff-Appellant,

vs.

LIBERTY MUTUAL INSURANCE COMPANY,
a Massachusetts corporation, Defendant-Appellee.

_____

SCCQ-14-0000727

ORIGINAL PROCEEDING

JUNE 29, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

     The United States District Court for the District of Hawai'i[1] (district court) certified the following question to this court:

_____

[1] The Honorable Helen Gillmor, United States District Judge, presided.

> May an excess liability insurer bring a cause of action, under the doctrine of equitable subrogation to the rights of the insured, against a primary liability insurer for failure to settle a claim against the mutual insured within the limits of the primary liability policy, when the primary insurer has paid its policy limit toward settlement?

We modify the certified question slightly to hold that an excess liability insurer can bring a cause of action, under the doctrine of equitable subrogation, against a primary liability insurer who in **bad faith** fails to settle a claim within the limits of the primary liability policy, when the primary insurer has paid its policy limit toward settlement.[2]

## I.    Background

The factual background relevant to a certified question proceeding "is based primarily upon the information certified to this court by the district court . . . ." Davis v. Four Seasons Hotel Ltd., 122 Hawaiʻi 423, 425, 228 P.3d 303, 305 (2010) (citing TMJ Hawaii, Inc. v. Nippon Trust Bank, 113 Hawaiʻi 373, 374, 153 P.3d 444, 445 (2007)).

Plaintiff St. Paul Fire & Marine Insurance Company (St. Paul), the excess insurer, and Defendant Liberty Mutual

---

[2]    The district court's "phrasing of the question[] should not restrict [this] court's consideration of the problems and issues involved." Allstate Ins. Co. v. Alamo Rent-A-Car, Inc., 137 F.3d 634, 637 (9th Cir. 1998) (first alteration in original) (citation omitted). This court "may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." Id. (citation omitted) (internal quotation marks omitted).

Insurance Company (Liberty Mutual), the primary insurer, issued insurance policies to Pleasant Travel Service, Inc. dba Royal Kona Resort and Hawaiian Hotels and Resort (Pleasant Travel). Pleasant Travel was insured from January 1, 2010 through January 1, 2011 by both St. Paul and Liberty Mutual. A primary insurer provides insurance against liability risk from $0 up to the limits of the policy. An excess insurer provides insurance beyond the limits of the primary insurance policy. In this case, the primary insurance policy covered up to $1 million.

In July 2010, Pleasant Travel was sued in the Circuit Court of the Third Circuit for the State of Hawaiʻi for damages resulting from an accidental death.[3] As the primary insurer, Liberty Mutual appointed counsel to represent Pleasant Travel. As the excess insurer, St. Paul alleges that Liberty Mutual rejected multiple pretrial settlement offers within the $1 million limit of its primary liability policy.

The subsequent trial resulted in a finding of liability against Pleasant Travel and a verdict of $4.1 million. In 2012, after the verdict, the action was settled for a

---

[3] Pleasant Travel was named as a defendant in the case entitled Estate of Karen Celaya, et al. v. Pleasant Travel Service dba Royal Kona Resort and Hawaiian Hotels and Resorts, et al., Case No. 10-01-265K.

confidential amount in excess of the Liberty Mutual policy limit.  St. Paul claims that it paid the amount in excess.

On June 10, 2013, St. Paul filed a Complaint against Liberty Mutual in the Circuit Court of the First Circuit for the State of Hawai'i (circuit court).  St. Paul, the excess insurer, alleged that Liberty Mutual, the primary insurer, acted in bad faith by rejecting multiple settlement offers within the limit of its primary liability policy.  On July 22, 2013, Liberty Mutual filed a Notice of Removal from the circuit court to the district court.

The certified question arose following the filing of Liberty Mutual's Motion for Judgment on the Pleadings on November 20, 2013, in which Liberty Mutual argued that St. Paul lacked standing to assert a claim for insurer bad faith and that St. Paul had no claim against Liberty Mutual for equitable subrogation.  On February 5, 2014, a hearing on the Motion for Judgment on the Pleadings was held.  The district court ordered the parties to meet and confer to frame a question for submission to this court.  Because the parties were unable to agree upon the question for submission, the district court drafted the certified question.

## II.  Standard of Review

This court has "jurisdiction and powers . . . [t]o answer, in its discretion . . . any question or proposition of law certified to it by a federal district or appellate court if the supreme court shall so provide by rule[.]"  Hawaiʻi Revised Statutes (HRS) § 602-5(a)(2) (Supp. 2010).

> When a federal district or appellate court certifies to the Hawaiʻi Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawaiʻi that is determinative of the cause and that there is no clear controlling precedent in the Hawaiʻi judicial decisions, the Hawaiʻi Supreme Court may answer the certified question by written opinion.

Hawaiʻi Rules of Appellate Procedure Rule 13(a) (2010).

A question of law presented by a certified question is reviewable de novo under the right/wrong standard of review. Miller v. Hartford Life Ins. Co., 126 Hawaiʻi 165, 173, 268 P.3d 418, 426 (2011) (citing Francis v. Lee Enters., Inc., 89 Hawaiʻi 234, 236, 971 P.2d 707, 709 (1999)).

## III. Discussion

We hold that St. Paul can bring a cause of action as an excess insurer against Liberty Mutual, a primary insurer, under the doctrine of equitable subrogation.  Hawaiʻi state courts broadly apply the doctrine of equitable subrogation and thus, allowing the excess insurer a cause of action here

5

comports with our prior jurisprudence.  Further, this broad application is in line with the majority of jurisdictions, which have recognized equitable subrogation claims under similar circumstances.  Finally, permitting an excess insurer to subrogate to the rights of the insured, and assert a claim against a primary insurer for a bad faith failure to settle a claim within the limits of the primary liability policy, protects the public interest in ensuring equity in insurance matters and encouraging settlement.

A.    **Hawai‘i Case Law Supports a Broad Application of the Doctrine of Equitable Subrogation**

Hawai‘i has recognized the doctrine of equitable subrogation as an appropriate remedy when equity demands.  Through subrogation, the subrogee "is put in all respects in the place of the party to whose rights he is subrogated."  Peters v. Weatherwax, 69 Haw. 21, 27, 731 P.2d 157, 161 (1987) (quoting Kapena v. Kaleleonalani, 6 Haw. 579, 583 (Haw. Kingdom 1885)) (internal quotation mark omitted).  Subrogation is a "creature of equity jurisprudence," and is "so administered as to secure real and essential justice without regard to form[.]"  Id. (alteration in original) (citation omitted) (internal quotation marks omitted).

6

Equitable subrogation has a broad scope[4] and we have defined the doctrine as "broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter[.]" Id. (alteration in original) (citation omitted) (internal quotation mark omitted). In considering this broad application, the district court has previously explained that "[s]ubrogation is proper between a primary and excess insurer." Reliance Ins. Co. v. Doctors Co., 299 F. Supp. 2d 1131, 1151 (D. Haw. 2003), aff'd sub nom. Reliance Ins. Co. v. Doctors' Co., 132 F. App'x 730 (9th Cir. 2005).

Notwithstanding the broad scope of equitable subrogation, Liberty Mutual asserts that St. Paul's claim should be dismissed because "St. Paul has not paid a debt or satisfied some liability for which another party . . . is primarily responsible." Liberty Mutual explains that it defended Pleasant

---

[4] Courts apply the doctrine of equitable subrogation in a "broad and expansive" manner to take account of the need for "justice and equity [in] particular situations." Seabright Ins. Co. v. Matson Terminals, Inc., 828 F. Supp. 2d 1177, 1194 (D. Haw. 2011) (quoting Han v. United States, 944 F.2d 526, 529 (9th Cir. 1991)). In Seabright, for example, the district court permitted an insurer to seek recovery of attorneys' fees from the defendant under the doctrine of equitable subrogation despite a lack of relevant case law because "[c]ommon sense dictates here that, to find otherwise, would result in grave inequity." Id. at 1193.

Travel against the accidental death claim and paid its liability up to the primary policy limit. According to Liberty Mutual, St. Paul did not pay for Liberty Mutual's liability but "merely discharged its own contractual obligations" to Pleasant Travel.

While it is true that St. Paul discharged its obligations to Pleasant Travel, Liberty Mutual, as the primary insurer, also had an obligation to Pleasant Travel to pursue settlement. An insurer owes a duty of good faith and fair dealing to its insured. See Best Place Inc. v. Penn Am. Ins. Co., 82 Hawaiʻi 120, 132, 920 P.2d 334, 346 (1996).[5] A breach of this duty includes an insurer's unreasonable refusal to settle a

_____

[5] We have previously relied on contract law to establish an insurer's duty of good faith and fair dealing to its insured. See Best Place Inc., 82 Hawaiʻi at 123, 920 P.2d at 337 (explaining that the duty of good faith and fair dealing was "implied in contracts"). This court also declined to extend the duty of good faith and fair dealing to claimants not part of the subject insurance contract. Simmons v. Puu, 105 Hawaiʻi 112, 127, 94 P.3d 667, 682 (2004). Liberty Mutual argues that it owes no duty of good faith and fair dealing to St. Paul because this duty is based on the contractual relationship between the insurer and insured. St. Paul does not argue that Liberty Mutual owes it a direct duty, however, but rather seeks to apply the doctrine of equitable subrogation. Through equitable subrogation, St. Paul "steps into the shoes" of Pleasant Travel to enforce Liberty Mutual's duty to Pleasant Travel to act in good faith. See State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawaiʻi 315, 329, 331, 978 P.2d 753, 767, 769 (1999).

To apply the doctrine of equitable subrogation, St. Paul does not need a contract with Liberty Mutual. The doctrine of equitable subrogation is a principle of equity that "arises out of a relationship that need not be contractually based." Id. at 328-29, 978 P.2d at 766-67 (comparing equitable subrogation to conventional subrogation that arises out of a contract between parties). As we have previously explained, equitable subrogation should be administered "to secure real and essential justice without regard to form, and is independent of any contractual relations between the parties to be affected by it." Kapena, 6 Haw. at 583 (emphasis added) (citation omitted).

claim on behalf of the insured.  Id. at 124, 920 P.2d at 338.

We have explained that "[e]ven if the ultimate judgment was in

excess of the policy limits, the insurer may still be liable for

the entire amount if its refusal to settle was unreasonable."

Delmonte v. State Farm Fire & Cas. Co., 90 Hawai'i 39, 52 n.9,

975 P.2d 1159, 1172 n.9 (1999) (citing Crisci v. Security Ins.

Co., 426 P.2d 173 (Cal. 1967) (in bank)).  Applying the doctrine

of equitable subrogation in this context permits an excess

insurer to hold a primary insurer to its obligation to the

insured.

Upholding Liberty Mutual's characterization of St.

Paul's actions, in contrast, would permit primary insurers to

chance litigation and choose to "'gambl[e]' with the excess

carrier's money when potential judgments approach the primary

insurer's policy limits," rather than settle.  Hartford Accident

& Indem. Co. v. Aetna Cas. & Sur. Co., 792 P.2d 749, 753 (Ariz.

1990) (in banc) (quoting Commercial Union Ins. Co. v. Med.

Protective Co., 393 N.W.2d 479, 483 (Mich. 1986)).  For example,

suppose that in the instant case, the underlying plaintiff's

claim was for $3 million in damages, but the plaintiff agreed to

settle for $1 million.  Liberty Mutual, however, determines that

at trial, the plaintiff's chance of prevailing is 50%.  In such

a situation, Liberty Mutual would have no incentive to settle. If the plaintiff prevailed at trial, winning an amount in excess of $1 million, Liberty Mutual would be in the same position as if it settled, given that St. Paul would cover the excess amount. However, if the plaintiff lost at trial, Liberty Mutual would be in a better position than if it settled, saving itself from payment of $1 million. Such a hypothetical demonstrates how allowing St. Paul's claims to go forward can function to mitigate the "potential that a primary insurer will forgo fair and reasonable settlements and roll the dice with, what is in essence, the excess insurer's money." Nat'l Sur. Corp. v. Hartford Cas. Ins. Co., 493 F.3d 752, 758 (6th Cir. 2007).[6]

Liberty Mutual also argues that St. Paul cannot subrogate to the rights of Pleasant Travel because Pleasant Travel "never faced the prospect of direct liability for the amount of the [] verdict in excess of [Liberty Mutual's] liability limit because that amount was within St. Paul's

---

[6] The Sixth Circuit and Seventh Circuit provided similar hypotheticals in holding that an excess insurer could step into the shoes of the insured and sue a primary insurer under the doctrine of equitable subrogation. See Nat'l Sur. Corp., 493 F.3d at 757; Twin City Fire Ins. Co. v. Country Mut. Ins. Co., 23 F.3d 1175, 1179 (7th Cir. 1994). The Sixth Circuit recognized that in evaluating such a hypothetical, the costs of litigation to the insurer must also be considered, but noted that "[a]lthough the presence of litigation costs diminishes the incentive an insurer has to go to trial, the underlying problem still remains." Nat'l Sur. Corp., 493 F.3d at 758.

liability limit."  Equitable subrogation may, however, be applied even "without any showing that the insured ha[s] suffered any loss."  Seabright Ins. Co. v. Matson Terminals, Inc., 828 F. Supp. 2d 1177, 1194 (D. Haw. 2011) (quoting Nw. Mut. Ins. Co. v. Farmers' Ins. Grp., 143 Cal. Rptr. 415, 423 (Cal. Ct. App. 1978)).  In Seabright, the district court explained that "[i]t is not a prerequisite to equitable subrogation that the subrogor suffered actual loss; it is required only that he would have suffered loss had the subrogee not discharged the liability or paid the loss."  Id. at 1193 (emphasis added) (quoting Nw. Mut. Ins. Co., 143 Cal. Rptr. at 423).  In other words, because an insured can recover from a primary insurer that refused reasonable settlement offers, "the excess carrier, who discharged the insured's liability as a result of this tort, stands in the shoes of the insured and should be permitted to assert all claims against the primary carrier which the insured himself could have asserted."  Commercial Union Ins. Co., 393 N.W.2d at 482 (quoting Commercial Union Assurance Cos. v. Safeway Stores, Inc., 610 P.2d 1038, 1041 (Cal. 1980)) (internal quotation mark omitted).  St. Paul can thus bring a cause of action under the doctrine of equitable subrogation against Liberty Mutual if Pleasant Travel could

assert such a claim, even when Pleasant Travel suffers no actual loss.  This court's line of cases advocating for a broad and equity-based application of subrogation supports such a finding.

**B.   The Majority of Jurisdictions Permit an Excess Insurer To File a Claim Against a Primary Insurer Under the Doctrine of Equitable Subrogation**

Hawaii's broad application of the doctrine of equitable subrogation comports with the majority of jurisdictions, which have held that, under the state law applicable in those cases, an excess insurer can seek relief from a primary insurer under the doctrine.[7]  For example, the United States Court of Appeals for the Ninth Circuit allowed an excess insurer to bring a claim against a primary insurer under the doctrine of equitable subrogation for the primary insurer's bad faith refusal to settle.  Valentine v. Aetna Ins. Co., 564

---

[7]   See, e.g., Nat'l Sur. Corp., 493 F.3d at 756 (concluding that "an excess insurer is permitted to step into the shoes of the insured and sue a primary insurer pursuant to the doctrine of equitable subrogation to enforce the primary insurer's duty to avoid excessive judgments against an insured"); Certain Underwriters of Lloyd's v. Gen. Accident Ins. Co., 909 F.2d 228, 233 (7th Cir. 1990) (holding that "Indiana would allow an excess carrier to sue a primary carrier on the basis of equitable subrogation"); U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985) (holding that "an excess insurer who has discharged an insured's liability stands in the shoes of the insured and as subrogee may maintain an action for breach of the primary carrier's duty to act in good faith"); Commercial Union Assurance Cos., 610 P.2d at 1041 (explaining that "[i]t has been held in California and other jurisdictions that the excess carrier may maintain an action against the primary carrier for [] [wrongful] refusal to settle within the latter's policy limits" (alterations in original)); Truck Ins. Exch. v. Century Indem. Co., 887 P.2d 455, 458 (Wash. Ct. App. 1995) (recognizing that "[a]n excess insurer is subrogated to the rights of its insured to recover on claims the insured has against the primary insurer").

F.2d 292, 297 (9th Cir. 1977).  The court explained: "When there is no excess insurer, the insured becomes his own excess insurer, and his [] primary insurer owes him a duty of good faith in protecting him from an excess judgment and personal liability."  Id. (quoting Cont'l Cas. Co. v. Reserve Ins. Co., 238 N.W.2d 862, 864 (Minn. 1976)).  If the insured purchases excess insurance, "he in effect substitutes an excess insurer for himself."  Id. (quoting Cont'l Cas. Co., 238 N.W.2d at 864). The Supreme Court of Michigan further explained that when an insured does not have excess insurance, the insured has "every incentive to enforce the primary insurer's contractual duty to defend or to attempt to settle within policy limits in good faith."  Commercial Union Ins. Co., 393 N.W.2d at 482.  But, if the insured does carry excess coverage, "that incentive dissolves" and "[t]he excess carrier, and not the insured, bears the injury resulting from the primary insurer's breach, and is therefore the party with the greatest incentive to enforce the primary insurer's duties."  Id.

In a case similar to the one before this court, the Supreme Court of Arizona held that an excess insurer could assert a claim against a primary insurer, under the doctrine of equitable subrogation, for a bad faith failure to settle within

13

primary policy limits.  Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co., 792 P.2d 749, 757 (Ariz. 1990).[8]  The court noted that "[a] number of jurisdictions have expanded the duty of good faith by recognizing a duty to an excess [insurer] by the primary [insurer]"[9] and adopted the doctrine of equitable subrogation.  Id. at 752-53.  The court explained that these jurisdictions adopted the doctrine of equitable subrogation in part because subrogation serves "to encourage fair and reasonable settlements of lawsuits."  Id. at 753.  Based on this public policy analysis, the court determined that "[a]n excess insurer should not have to pay a judgment if the primary insurer caused the excess judgment by a bad faith failure to settle within primary limits" and held that the excess insurer could bring such a claim against the primary insurer.  Id. at 754.

The Supreme Court of Oregon also held that an excess insurer can bring a claim against the primary insurer under the

_____

[8]    Specifically, the question before the court was: "May an excess insurance carrier, under the doctrine of equitable subrogation, assert a claim against a primary insurance carrier for bad faith failure to settle within primary policy limits?"  Hartford Accident & Indem. Co., 792 P.2d at 751.

[9]    In Arizona, as in Hawaiʻi, a primary insurer owes its insured "a duty of good faith in deciding whether to accept or reject settlement offers."  Hartford Accident & Indem. Co., 792 P.2d at 752.  Through the doctrine of equitable subrogation, the duty of good faith has been expanded to allow an excess insurer to "step[] into the shoes" of the insured and assert a claim against the primary insurer.  Id. at 753.

doctrine of equitable subrogation.  In the case at issue, evidence suggested that the primary insurer "made little or no effort to attempt to negotiate a settlement" and as a result, the excess insurer claimed that its "share of the settlement [was] higher than it otherwise would have been."  Maine Bonding & Cas. Co. v. Centennial Ins. Co., 693 P.2d 1296, 1298, 1302-03 (Or. 1985).  The court explained that "[a] primary insurer owes an excess insurer essentially the same duty of due diligence in claims handling and settlement negotiating it owes to an insured—due care under all the circumstances."  Id. at 1302. The court further noted that a primary insurer is responsible for considering the interests of all parties involved in a claim, including those of the excess insurer.  Id.

The majority of courts faced with the issue before us have permitted excess insurers to bring a claim of bad faith against a primary insurer under the doctrine of equitable subrogation.  As discussed further below, the doctrine enables an excess insurer to seek relief from a primary insurer who can otherwise take advantage of a situation that leaves the excess insurer with no other remedy.

15

**C.    Application of the Doctrine of Equitable Subrogation Protects the Public Interest**

The doctrine of equitable subrogation is an equitable remedy that protects an insurer from paying a debt that should be discharged by another.  The Hawaiʻi Insurance Code, Chapter 431 explains that "[t]he business of insurance is one affected by the public interest, requiring that all persons be <u>actuated by good faith</u>, abstain from deception and <u>practice honesty and equity</u> in all insurance matters."  HRS § 431:1-102 (2005) (emphases added).  Allowing excess insurers to subrogate to the rights of the insured upholds the Hawaiʻi Insurance Code by enabling excess insurers to litigate bad faith claims against the primary insurer and to seek equitable relief.

In addition, subrogation promotes the duty of insurers "to accept reasonable settlements."  <u>Best Place Inc.</u>, 82 Hawaiʻi at 128, 920 P.2d at 342 (quoting <u>Gruenberg v. Aetna Ins. Co.</u>, 510 P.2d 1032, 1037 (Cal. 1973) (in bank)) (internal quotation mark omitted).  Settlement is a goal of proper process.  <u>Young v. Allstate Ins. Co.</u>, 119 Hawaiʻi 403, 414, 198 P.3d 666, 677 (2008).  Subrogation enables an excess insurer to hold a primary insurer to its duty to pursue reasonable settlements and not to gamble on litigation.  <u>Hartford Accident & Indem. Co.</u>, 792 P.2d at 753; <u>see also</u> <u>W. Am. Ins. Co. v. RLI Ins. Co.</u>, 698 F.3d 1069,

1076 (8th Cir. 2012) ("When the primary insurer has control of defending underlying claims, permitting subrogation claims by the excess insurer increases the likelihood of fair and efficient settlement of lawsuits . . . ."); Nat'l Sur. Corp., 493 F.3d at 757 ("Absent a rule permitting excess insurers to recover against primary insurers, primary insurers could, in bad faith, fail to accept settlement offers at or near policy limits with impunity."); Valentine, 564 F.2d at 297 (stating that subrogation allows enforcement of the primary insurer's duty to settle, a breach of which would "imperil[] the public and judicial interests in fair and reasonable settlement of lawsuits" (quoting Cont'l Cas. Co., 238 N.W.2d at 864-65)).

Liberty Mutual argues that subrogation is not necessary because St. Paul could have funded a settlement, and thereafter sought reimbursement from Liberty Mutual. If an excess insurer was left with the solution urged by Liberty Mutual, however, then "the excess insurer risks losing the policy-limit contributions of the primary insurer and being forced to pay the entire settlement itself, even though the settlement may have been in the overall best interests of the insured." Valentine, 564 F.2d at 297 (quoting Cont'l Cas. Co., 238 N.W.2d at 865). In addition, "[a]n excess carrier owes no

17

duty to the insured nor to the primary carrier either to defend the insured or to enter into settlement negotiations." Certain Underwriters of Lloyd's v. Gen. Accident Ins. Co., 699 F. Supp. 732, 740 (S.D. Ind. 1988), aff'd, 999 F.2d 228 (7th Cir. 1990); see also Cont'l Cas. Co. v. U.S. Fid. & Guaranty Co., 516 F. Supp. 384, 392 (N.D. Cal. 1981) (stating that where a primary insurer is "in control of the litigation . . . it would [be] improper for the . . . excess carrier to step in and try to settle it"). To force an excess insurer to settle would thus provide a "disincentive" for the primary insurer to seek settlement. Valentine, 564 F.2d at 298.[10] In sum, the public interest in encouraging reasonable settlement is best served by permitting an excess insurer to seek relief under the doctrine of equitable subrogation.

## IV. Conclusion

For the foregoing reasons, we hold that an excess liability insurer can bring a cause of action, under the doctrine of equitable subrogation, against a primary liability

---

[10] The Ninth Circuit also explains that forcing an excess insurer to cover part of a primary liability insurance policy would "[distort] the coverages and rate structures of the two different types of insurance—primary and excess . . . ." Valentine, 564 F.2d at 298. This would further violate the policy set forth in the Hawaiʻi Insurance Code to "promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory . . . ." HRS § 431:14-101 (2005).

insurer who in bad faith fails to settle a claim within the limits of the primary liability policy, when the primary insurer has paid its policy limit toward settlement.

| | |
|---|---|
| Wesley H.H. Ching and Sheree Kon-Herrera for plaintiff | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Richard B. Miller and David R. Harada-Stone for defendant | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

