Filed 8/5/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>      Defendant and Respondent. | B264861<br><br>(Los Angeles County<br>Super. Ct. No.BC559203) |

      APPEAL from a judgment of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Reversed.

      Clyde & Co., David Anthony Gabianelli and Marianne G. May for Plaintiff and Appellant.

      Sheppard Mullin Richter & Hampton, Marc Jeremy Feldman and Peter H. Klee for Defendant and Respondent.

# INTRODUCTION

A film industry worker was seriously injured on a film set. His employer had two primary insurance policies with Fireman's Fund Insurance Company, and an excess insurance policy with Ace American Insurance Company. The injured worker sued, Fireman's Fund defended the case, and the case eventually settled with the participation of and contributions from both insurers.

Ace American then sued Fireman's Fund for equitable subrogation, alleging that the injured worker initially offered to settle his case within the limits of the Fireman's Fund policies, and that Fireman's Fund unreasonably rejected those settlement offers. Ace American alleged that as a result, it was required to contribute to the eventual settlement, which exceeded the limits of the Fireman's Fund policies.

The question before us is whether Ace American has stated viable causes of action for equitable subrogation and breach of the duty of good faith and fair dealing, or whether the lack of a judgment in the employment injury case bars Ace American's claims. We find that because Ace American, the excess insurer, alleged it was required to contribute to the settlement of the underlying case due to the primary insurer's failure to reasonably settle the case within policy limits, the lack of an excess judgment against the insured in the underlying case does not bar an action for equitable subrogation and breach of the duty of good faith and fair dealing.

# FACTUAL AND PROCEDURAL BACKGROUND

The facts below are taken from Ace American's complaint and first amended complaint. Because the case is on appeal following a demurrer, we accept the alleged facts as true for the limited purpose of determining whether Ace American has stated a viable cause of action. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.)

## A.     The underlying action

In July 2010, John Franco was working on a film set when a special effects accident caused him to suffer serious injuries. Franco's injuries included pelvic crush injuries, a broken hip, fractures to both femurs, crush injuries to both knees, broken tibias and fibulas, broken ribs, a punctured lung, and soft tissue injuries to his face. Franco

2

alleged that the incident left him with permanent nerve pain, an eye injury, urinary and sexual dysfunction, and fear and depression.

In April 2011, Franco and his wife sued Warner Brothers Entertainment, Inc. and related entities for damages and loss of consortium. Fireman's Fund provided the Warner Brothers entities a primary insurance policy with a $2 million limit, and an umbrella insurance policy with a $3 million limit. Ace American provided the Warner Brothers entities an excess insurance policy with a $50 million limit.

Fireman's Fund defended the Warner Brothers entities in the Francos' lawsuit. In April and May 2012, the Francos made settlement demands within the limits of the Fireman's Fund policies. According to Ace American's complaints, the demands were reasonable and supported by substantial evidence, but Fireman's Fund "failed and/or refused to pay those demands within [the insurance policies'] limits." In October 2012, the Francos settled their lawsuit "for an amount substantially in excess" of the limits of the Fireman's Fund policies. According to Ace American, Fireman's Fund "consented to the settlement and contributed to it", and Ace American contributed the amounts in excess of the Fireman's Fund policies' limits. Following the settlement, the case was dismissed with prejudice.

### B.     This action

Ace American filed an action against Fireman's Fund for equitable subrogation and breach of the covenant of good faith and fair dealing. In the first amended complaint, which is relevant here, Ace American alleged the facts of the Franco lawsuit, as stated above. It alleged that the Francos' settlement demands within the limits of the Fireman's Fund policy were reasonable, and there was a substantial likelihood that a jury verdict would exceed the limits of the Fireman's Fund policies. It alleged that "Ace American sustained a loss for which [Fireman's Fund] is liable because of [Fireman's Fund's] wrongful conduct in failing to settle the Underlying Action within its policy limits, despite repeat[ed] opportunities to settle within its limits." Ace American also alleged that its policy provided that if the insured had a right to recover all or part of any payment Ace American made under the policy, those rights were transferred to Ace American.

3

Fireman's Fund demurred, arguing that the rights of an excess insurer such as Ace American derive from the rights of the insured, Warner Brothers. As such, an excess insurer may only sue for equitable subrogation if there has been a judgment against the insured that exceeds the limits of the primary policy. Because the Franco lawsuit settled and there was no judgment against Warner Brothers, Fireman's Fund argued, Ace American could not sue for equitable subrogation. Fireman's Fund relied on *RLI Insurance Company v. CNA Casualty of California* (2006) 141 Cal.App.4th 75 (*RLI*), which stated that an "insured's right to recover from the primary insurer hinges upon 'a judgment in excess of policy limits.'" (*RLI, supra*, 141 Cal.App.4th at p. 82, quoting *Hamilton v. Maryland Casualty Co*. (2002) 27 Cal.4th 718, 725 (*Hamilton*).) *RLI* also stated, "Without an excess judgment, the primary insurer's refusal to settle is not actionable." (*RLI, supra*, 141 Cal.App.4th at p. 82.)

Ace American opposed the demurrer, arguing that a judgment is not required for an equitable subrogation action by an excess insurer. Ace American argued that it was irrelevant whether the underlying action was resolved by a settlement or a judgment, as long as the insured—and by extension, the excess insurer—was liable for any amount beyond the limits of the primary policy as a result of the primary insurer's bad faith refusal to settle within policy limits. Ace American relied in part on *Fortman v. Safeco Insurance Co*. (1990) 221 Cal.App.3d 1394 (*Fortman*), which held that an excess judgment was not a prerequisite to an equitable subrogation claim, as long as the excess insurer demonstrated that it actually paid an amount in excess of the primary insurer's policy limits.

The trial court sustained Fireman Fund's demurrer without leave to amend. The court held, "*RLI* is directly on point. *RLI* was clear: Until the judgment is actually entered, the mere possibility or probability of an excess judgment does not render the refusal to settle actionable. Here, there is no dispute a judgment was not entered. The demurrer is sustained."

The trial court entered judgment, and Ace American timely appealed.

4

**STANDARD OF REVIEW**

"We review de novo the trial court's order sustaining a demurrer." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468.) We accept as true all well-pleaded allegations in the complaint, and treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6; *Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)

**DISCUSSION**

**A.      Equitable subrogation and breach of the covenant of good faith and fair dealing**

"'Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. . . . [¶] "Excess" or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted.' [Citation.]" (*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania* (2007) 148 Cal.App.4th 1296, 1304.)[1] Here, Fireman's Fund is the primary insurer, and Ace American is the excess insurer.

California recognizes "an implied duty on the part of the insurer to accept reasonable settlement demands on [covered] claims within the policy limits." (*Hamilton, supra,* 27 Cal.4th at p. 724.) "An insurer's liability for failing to accept a reasonable settlement offer 'is imposed not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the *implied covenant of good faith and fair dealing.*'" (*Archdale v. American Internat. Specialty Lines Ins. Co*. (2007) 154 Cal.App.4th 449, 465-466 (*Archdale*), quoting *Crisci v.*

---

[1] In its opposition to Fireman's Fund's demurrer, Ace American encouraged the court to overrule the demurrer because New York law may apply and "there has been no choice of law determination in this case." Toward the end of its opening brief on appeal, Ace American again mentions that "there has been no choice of law determination," and argues it was "premature" for the trial court to sustain the demurrer. Ace American has provided no argument or analysis on the choice-of-law issue, and both parties' analyses focus almost exclusively on California law. We therefore apply California law.

*Security Ins. Co. of New Haven, Conn*. (1967) 66 Cal.2d 425, 430 (*Crisci*) (emphasis in *Archdale*).) "An insurer that breaches its duty of reasonable settlement is liable for all the insured's damages proximately caused by the breach, regardless of policy limits." (*Hamilton*, *supra*, 27 Cal.4th at p. 725.)

"Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." (*Fireman's Fund Ins. Co. v. Maryland Cas. Co*. (1998) 65 Cal.App.4th 1279, 1291 (*Fireman's Fund v. Maryland*).) "Equitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss." (*Maryland Casualty Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082, 1088.) "Since the insured would have been able to recover from the primary carrier for a judgment in excess of policy limits caused by the carrier's wrongful refusal to settle, the excess carrier, who discharged the insured's liability as a result of this tort, stands in the shoes of the insured and should be permitted to assert all claims against the primary carrier which the insured himself could have asserted." (*Commercial Union Assurance Companies v. Safeway Stores, Inc*. (1980) 26 Cal.3d 912, 917-918.) "The subrogated insurer is said to '"stand in the shoes"' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured." (*Fireman's Fund v. Maryland, supra,* 65 Cal.App.4th at p. 1292.)

The elements of an insurer's cause of action for equitable subrogation include: Ace American has paid the claim of its insured, Warner Brothers, to protect its own interest and not as a volunteer; Ace American has suffered damages caused by Fireman's Fund's act or omission; and Ace American's damages are in a liquidated sum.[2] (*Fireman's Fund v. Maryland, supra,* 65 Cal.App.4th at p. 1292.)

---

[2] "The essential elements of an insurer's cause of action for equitable subrogation are as follows: (a) the insured [Warner Brothers] suffered a loss for which the defendant [Fireman's Fund] is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the

## B.    Case law and analysis

### 1.    *Fortman* and *RLI*

In this case, we are faced with conflicting decisions from different divisions of this district.  In *Fortman*, *supra*, 221 Cal.App.3d 1394, Division One held that an equitable subrogation action could proceed against a primary insurer that initially breached its duty to settle a case within policy limits, resulting in a settlement that exceeded policy limits.  By contrast, in *RLI*, *supra*, 141 Cal.App.4th 75, Division Five held that an equitable subrogation action *could not* proceed under the same circumstances.  *RLI* rejected the reasoning of *Fortman*, and held that because the case resulted in a settlement rather than an excess judgment against the insured, any equitable subrogation action was barred.  We discuss both cases below, along with additional cases that guide our determination, and conclude that it is appropriate to follow the reasoning of *Fortman* rather than that of *RLI*.

In *Fortman*, *supra*, 221 Cal.App.3d 1394, three-year-old Nichole Fortman was injured when she fell from a moving Jeep driven by her mother.  (*Fortman, supra*, 221 Cal.App.3d at p. 1397.)  The Jeep was covered with a molded shell that included a door handle manufactured by Austin Hardware and Supply, Inc.  (*Ibid*.)  Austin had a $300,000 primary insurance policy from Safeco Insurance Company of America, and an excess insurance policy from U.S. Fire Insurance Company and Industrial Indemnity Company.  (*Ibid*.)  Before trial, Safeco refused offers to settle the case for $125,000.  (*Ibid*.)  During trial, Austin settled with Fortman for the full amount of the Safeco policy, plus $1,125,000 from U.S. Fire; U.S. Fire assigned its equitable subrogation claim to

wrongdoer; (b) the claimed loss was one for which the insurer [Ace American] was not primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured. [Citations.]."  ( *Fireman's Fund v. Maryland, supra,* 65 Cal.App.4th at p. 1292.)

Fortman. (*Ibid.*) Trial continued against the manufacturer of the molded shell, and the jury was asked to apportion damages among the manufacturer, Fortman's mother, and Austin. (*Id*. at pp. 1397-1398.) The jury awarded Fortman nearly $24 million, finding the mother 75 percent, the shell manufacturer 25 percent, and Austin 0 percent responsible. (*Id*. at p. 1398.)

Fortman brought an equitable subrogation claim. Safeco moved for summary judgment, arguing that because the jury found Austin not responsible for Fortman's injuries, equitable subrogation was not available because there had been no judgment against the insured in excess of the policy limits. (*Fortman, supra*, 221 Cal.App.3d at p. 1398.) The trial court granted the motion, and the Court of Appeal reversed. The court said that actions between liability insurers are not based on contract, but instead are based on "'equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.'" (*Id*. at p. 1399, quoting *American Auto. Ins. Co. v. Seaboard Sur. Co.* (1957) 155 Cal.App.2d 192, 196.)

The court noted that in Fortman's underlying case, "Safeco repeatedly, and allegedly in bad faith, refused settlement offers below its policy limits. Had the case been settled for any of those amounts, U.S. Fire would have paid nothing. Instead, U.S. Fire actually paid $1,125,000 toward the eventual settlement. If we adopted Safeco's position, U.S. Fire would suffer that loss without a remedy." (*Id*. at p. 1401.) Safeco argued that allowing an equitable subrogation action to proceed without an excess judgment against the insured could encourage collusive settlements, but the court rejected that argument: "In the equitable subrogation context before us, the excess insurer must show it actually paid an amount in excess of the primary insurer's policy limits. Courts easily could distinguish equitable subrogation cases with facts suggesting a collusive settlement from cases like this one in which the excess insurer actually paid a settlement." (*Id*. at p. 1402.) The court therefore rejected Safeco's argument that a judgment was required before an excess insurer could recover from a primary insurer.

In *RLI*, Division Two of this district reached a different result. In that case, a driver was involved in a traffic accident that caused a victim's death. (*RLI, supra*, 141

8

Cal.App.4th at p. 79.) The driver had a primary insurance policy with a limit of $1 million, and an excess insurance policy with a limit of $1 million. (*Ibid*.) The victim's family sued, and offered to settle their claims for $1 million. The primary insurer rejected the offer. (*Ibid*.) One year later, the case settled for $2 million; each insurer paid $1 million. (*Ibid*.)

The excess insurer then asserted a claim for equitable subrogation against the primary insurer. (*RLI, supra*, 141 Cal.App.4th at p. 79.) The trial court granted the primary insurer's motion for judgment on the pleadings, and the Court of Appeal affirmed. The court noted that a "claim for equitable subrogation may be pursued against a primary insurer that unreasonably refuses to settle a case within its policy limits, thereby exposing its insured (or an excess insurer) to liability on the claim." (*Id*. at p. 80.) The court held, however, that when a case resulted in a settlement, rather than a judgment, equitable subrogation was not available: "Without an excess judgment, the primary insurer's refusal to settle is not actionable." (*Id*. at p. 82.) The court went on to say, "The subrogation complaint in this case alleges that the [underlying] lawsuit settled. Missing from the complaint is the critical allegation that an excess judgment was entered against [the driver] in the [underlying] lawsuit. Because there is not an excess judgment, [the driver] suffered no harm, and has no claim to assert against the primary insurer. As a result, the excess insurer has no claim to assert against the primary insurer because the subrogation rights of the excess insurer are co-equal to and derivative of the rights of the insured." (*Ibid*.) The court concluded, "The excess insurer cannot sue the primary insurer for failure to settle within the limits of the primary insurer's policy, absent an excess judgment against the insured." (*Ibid*.)

The *RLI* court specifically rejected the reasoning of *Fortman*, saying it was "flawed" in three respects. We do not agree with this assessment. First, *RLI* said that *Fortman* conflicted with *Hamilton* (*RLI, supra*, 141 Cal.App.4th at p. 83), a conclusion we do not share for reasons discussed in the following section. Second, *RLI* said *Fortman* followed a rule relevant to equitable contribution rather than equitable

9

subrogation.[3] (*Ibid.*) Discussing policy, *Fortman* did discuss principles relating to equitable contribution (see *Fortman*, *supra*, 221 Cal.App.3d at p. 1399), and *RLI* is correct that such principles are generally inapplicable in equitable subrogation cases. (*RLI*, *supra*, 141 Cal.App.4th at pp. 83-84.) Although *Fortman*'s discussion of policy may have blurred the line distinguishing these two equitable principles, we do not find *Fortman*'s reasoning and ruling to be unreliable as a result. The *Fortman* court based its decision on established equitable subrogation cases and principles, it fully recognized that the insurers were not co-obligors, and did not apply an equitable contribution analysis to determine liability. Third, *RLI* asserted that *Fortman* improperly relied on *Continental Casualty Co. v. Royal Ins. Co.* (1990) 219 Cal.App.3d 111, in which the primary insurer abandoned its defense of the insured. (*RLI*, *supra*, 141 Cal.App.4th at p. 84, referencing *Fortman*, *supra*, 221 Cal.App.3d at pp. 1400-1401.) However, *Fortman* cited *Continental Casualty* in only a single paragraph, distinguishing equitable subrogation from third-party bad faith claims. (*Fortman*, *supra*, 221 Cal.App.3d at pp. 1400-1401.) We do not find that *Fortman*'s passing citation to *Continental Casualty* undermines the strength of its main holding: Where an excess insurer can show actual damages as a result of the primary insurer's failure to reasonably settle the case within primary policy limits, an excess judgment is not required to establish damages in an equitable subrogation case.

### 2. *Hamilton* and *Isaacson*

The *RLI* court stated, "The Supreme Court makes clear in *Hamilton* that a judgment in excess of the policy must be entered before there can be a claim for breach of the primary insurer's duty to settle. Because *Fortman* is contrary to the holding in *Hamilton*, we cannot follow *Fortman*." (*RLI, supra*, 141 Cal.App.4th at p. 85.) We

---

[3] "'Equitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss. . . .'" [¶] "'Equitable contribution, on the other hand, applies to apportion costs among insurers that share the same level of liability on the same risk as to the same insured.'" (*Transcontinental Ins. Co. v. Insurance Co. of State of Pennsylvania* (2007) 148 Cal.App.4th 1296, 1303.)

10

disagree that *Hamilton* requires a judgment to be entered before an insured or its assignee may recover for bad faith failure to settle within policy limits. Although the circumstances in *Hamilton* were dissimilar to the facts here, the *Hamilton* opinion, in dicta, specifically acknowledged that equitable subrogation could proceed under the circumstances of *RLI* and this case.

*Hamilton* focused on whether a stipulated judgment against an insured, coupled with an agreement not to enforce the judgment, was adequate evidence of damages in a breach of contract case. In the underlying action, clients of a dating service sued multiple franchises of the service, alleging that confidential conversations had been recorded and broadcast without the clients' permission. (*Hamilton, supra*, 27 Cal.4th at p. 722.) One franchise owner, VLP, was insured by Maryland Casualty Company with two successive commercial policies, each with a $1 million limit. (*Ibid*.) The clients made a settlement demand of $1 million to VLP, which Maryland denied. (*Id*. at p. 723.) Eventually the case settled without the participation of Maryland. The franchises agreed to stop recording private conversations, discount coupons were offered to class members, and some franchises—not including VLP—contributed cash to a settlement fund. (*Ibid*.) VLP agreed to have a stipulated judgment in the amount of $3 million entered against it, and it assigned all claims against Maryland to the clients; in return, the clients agreed not to execute the judgment against VLP. (*Ibid*.)

The plaintiff-clients then sued Maryland for breach of contract. (*Hamilton, supra*, 27 Cal.4th at p. 723.) They moved for summary judgment, arguing that "the insurer had breached its contractual duties by failing to accept their offer to settle their claims against VLP for $1 million and that the $3 million stipulated judgment was presumptive evidence, which Maryland had done nothing to rebut, of VLP's damages from the breach." (*Id*. at p. 724.) The trial court agreed, and entered judgment in the amount of $3 million for the plaintiffs. (*Ibid*.) The Supreme Court presented the question before it and its holding as follows: "[I]s the amount of the stipulated judgment presumptively binding on the insurer as to the damages suffered by the insured as a result of the alleged contract breach? We conclude it is not; a defending insurer cannot be bound to a settlement to

11

which it has not agreed and in which it has not participated, even where the settlement has been approved under Code of Civil Procedure section 877.6." (*Id*. at p. 722.) The Court added, "[I]n light of the settlement before trial and the covenant not to execute against the insured, the stipulated judgment is insufficient to prove that the insured suffered any damages from the insurer's breach of its settlement duty." (*Ibid*.)

The Court reasoned, "An insurer that breaches its duty of reasonable settlement is liable for all the insured's damages proximately caused by the breach, regardless of policy limits. [Citations.] Where the underlying action has proceeded to trial and a judgment in excess of the policy limits has been entered against the insured, the insurer is ordinarily liable to its insured for the entire amount of that judgment." (*Hamilton*, *supra*, 27 Cal.4th at p. 725.) The facts of the case set *Hamilton* apart from that rule, however: "In this case, the underlying action did not proceed to trial. It was terminated by settlement, resulting in a *stipulated* judgment coupled with a covenant not to execute against the insured. The question is whether such a stipulated judgment may be treated as a presumptive measure of the damages the policyholder has suffered as a result of the insurer's breach of contract." (*Ibid*., emphasis in original.) The Court noted a line of cases holding that "settlements reached without the consent or participation of the defending insurer, and incorporating a covenant not to execute or similar device, are entitled to no weight in a later action against the insurer for failure to settle." (*Id*. at p. 726.) It made no difference that the court had approved the settlement, because even court approval "cannot transform an agreed judgment that, by covenant, the insured will never have to pay, into a determination of the existence and extent of the insured's liability." (*Id*. at p. 729.) The court added, "A defending insurer cannot be bound by a settlement made without its participation and without any actual commitment on its insured's part to pay the judgment, even where the settlement has been found to be in good faith for purposes of section 877.6." (*Id*. at p. 730.) The focus of *Hamilton*, therefore, was whether there was sufficient evidence that the insured had suffered actual damages—not whether damages came in the form of an excess judgment versus an excess settlement.

12

The *Hamilton* Court also referenced its decision in *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775 (*Isaacson*), and indicated that the holding of *Isaacson* could be applicable in a case such as this one. In that case, two doctors who were insured by an insolvent insurance company sought damages from the California Insurance Guarantee Association (CIGA) following settlement of a lawsuit relating to a series of unsuccessful back surgeries that left a patient in pain. The patient demanded a settlement of $1 million, the limit of the doctors' insurance policy. (*Id*. at p. 782.) After the insurer was determined insolvent and CIGA assumed the doctors' defense, the patient demanded $500,000, the limit of CIGA's coverage. (*Ibid*.) CIGA refused to pay more than $400,000. (*Ibid*.) At the mandatory settlement conference before trial, the doctors, "at the suggestion of the settlement judge, and with CIGA's knowledge, agreed to pay $100,000 in addition to CIGA's $400,000 and thus ensure a settlement." (*Id*. at pp. 782-783.) The doctors then sued CIGA to recover the $100,000 they contributed to the settlement.

The Court held that CIGA's liability was limited to fulfilling its duties as required by statute. (*Isaacson*, *supra*, 44 Cal.3d at p. 788.) Unlike an insurer, therefore, CIGA could not breach of the duty of good faith and fair dealing, because such a duty arises only from a contractual relationship, not a statutory one. (*Id*. at p. 789.) CIGA nevertheless had a duty to accept a reasonable settlement offer: "Although CIGA's obligations are imposed by the Guarantee Act, and not by a contractual relationship with the insured (or the Unfair Practices Act), we hold that CIGA's statutory duty to defend and pay 'covered claims' encompasses a duty to accept a reasonable settlement offer in appropriate cases." (*Id*. at p. 792.) Thus, "[i]f CIGA fails to accept a reasonable settlement offer within its statutory limit, in a case in which a judgment against the insured in excess of that limit is likely, it violates its statutory duty to pay and discharge 'covered claims.' It may thereby become liable to the insured for reimbursement if the insured expends his own funds to settle, within the statutory limit." (*Ibid*.) "In order to recover reimbursement from CIGA following its refusal to settle a claim, an insured must prove that CIGA breached its duty to settle the case for a reasonable amount." (*Id*. at p.

13

793.)  Because liability in the doctors' case was unclear, however, the Court held that the doctors failed to prove that CIGA's denial of the $500,000 demand was unreasonable. (*Ibid.*)

Although *Isaacson* addressed CIGA's statutory duties, the *Hamilton* opinion referenced the implications of *Isaacson* for cases directly involving insurers: "*Isaacson* indicates that when an insured, faced with the insurer's unreasonable refusal to pay a settlement demand within the policy limits and exposed to potential personal liability substantially beyond the policy limits, actually contributes payment to conclude the settlement (in which the insurer also participates), the insured may recover the amount of his or her payment from the insurer in an action for bad faith failure to settle.  In those circumstances, a bad faith action may be brought by the insured, or the claimant as the insured's assignee, despite the absence of a litigated excess judgment." (*Hamilton*, *supra*, 27 Cal.4th at p. 731.)  The Court contrasted the facts of *Hamilton*, where the insured neither contributed to the settlement nor risked execution of an excess judgment: "Where, as here, the insured, without the insurer's agreement, stipulates to a judgment against it in excess of both the policy limits and the previously rejected settlement offer, and the stipulated judgment is coupled with a covenant not to execute, the agreed judgment cannot fairly be attributed to the insurer's conduct, even if the insurer's refusal to settle within the policy limits was unreasonable." (*Ibid.*)

Here, the situation is more akin to *Isaacson* than *Hamilton*—Ace American alleged that Fireman's Fund unreasonably refused to settle within policy limits, and as a result, Ace American (as Warner Brothers' subrogee) actually contributed to the eventual settlement, in which Fireman's Fund, as the primary insurer, also participated.  There was no stipulated judgment or agreement not to execute, as in *Hamilton*.  As the opinions in *Hamilton* and *Isaacson* indicate, this is a situation in which a bad faith action may be brought by the insured or the insured's assignee, "despite the absence of a litigated excess judgment." (*Hamilton, supra*, 27 Cal.4th at p. 731; see also *Smith v. State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104, 1114 ["a judgment against the insured (or, if we read the *Isaacson* and *Continental Casualty* decisions correctly, a payment by the

14

insured in settlement of a claim) is a condition to the insured's right to assign to the claimant a cause of action for bad faith against the insurer."].) We therefore reject the assertion in *RLI*, urged here by Fireman's Fund, that *Hamilton* requires entry of a judgment against the insured before a claim arises for equitable subrogation.

Fireman's Fund points to *RLI*'s reliance on a statement from *Hamilton* that a "pretrial *settlement* . . . 'is insufficient to show, even rebuttably, that the insured has been injured to *any* extent by [the primary insurer's] failure to settle, much less in the amount of the stipulated judgment.'" (*RLI*, *supra*, 141 Cal.App.4th at p. 82, quoting *Hamilton*, *supra*, 27 Cal.4th at p. 726.) But *Hamilton*'s focus was on the sufficiency of evidence of actual damages—not on whether the damages arose as a result of a settlement or a judgment. In the section *RLI* quoted, the *Hamilton* Court already had noted the parties' covenant not to execute the stipulated judgment, and then stated, "In these circumstances, the judgment provides no reliable basis to establish damages resulting from a refusal to settle, an essential element of plaintiffs' cause of action." (*Hamilton*, *supra*, 27 Cal.4th at p. 726.) Fireman's Fund argues that "*Hamilton* was clear that an excess judgment is an essential element of a failure to settle claim." We disagree. As discussed above, *Hamilton* focused on reliable proof of damages; it did not limit the form of that proof to an excess judgment versus an excess settlement.

3.     Other California cases

Fireman's Fund points to a number of other cases stating that an equitable subrogation action may not proceed without an excess judgment against the insured. Indeed, many cases include language to that effect. (See, e.g., *Finkelstein v. 20th Century Ins. Co.* (1992) 11 Cal.App.4th 926, 929 (*Finkelstein*) ["It is well established that an insurance company is liable to an insured when the insurer unreasonably refuses to settle the case within the insured's policy limits and a 'judgment' in excess of those limits is ultimately rendered against the insured."]; *Safeco Ins. Co. v. Superior Court* (1999) 71 Cal.App.4th 782, 788 (*Safeco*) ["A cause of action for bad faith refusal to settle arises only after a judgment has been rendered in excess of the policy limits."]; *Wolkowitz v. Redland Ins. Co.* (2003) 112 Cal.App.4th 154, 162 ["In the Absence of an Excess

15

Judgment Determining the Fact and Amount of Shamrock's Liability, Redland Can Have No Liability for Alleged Bad Faith Refusal to Accept a Policy Limits Settlement Offer"]; *Archdale v. American Intern. Specialty Lines Ins. Co.*, *supra*, 154 Cal.App.4th at p. 474 ["No cause of action for breach of contract based on an insurer's failure to settle a claim exists until a judgment in excess of policy limits has been rendered against the insured."].)

However, "[t]he holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning." (*McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 226; see also *PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1097 ["[T]he language of an opinion must be construed with reference to the facts presented by the case; the positive authority of a decision is coextensive only with such facts."].) A closer examination of the cases cited by Fireman's Fund makes clear that the purpose behind the statements requiring a judgment in an underlying lawsuit is simply to ensure that a plaintiff has a reliable basis for alleging that damages have resulted from the insurer's alleged breach of the duty to settle within policy limits—the same concern reflected in *Hamilton*. As noted above, two required elements for equitable subrogation are that the insurer has suffered damages caused by the defendant's act or omission, and "the insurer's damages are in a liquidated sum, generally the amount paid to the insured." (*Fireman's Fund v. Maryland*, *supra*, 65 Cal.App.4th at p. 1292.) A judgment may constitute reliable evidence of damages. (See *Crisci, supra,* 66 Cal.2d at p. 431 ["The size of the judgment recovered in the personal injury action when it exceeds the policy limits, although not conclusive, furnishes an inference that the value of the claim is the equivalent of the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim."].) But it does not follow that a judgment is the *only* manner by which an insured or subrogee may prove damages resulting from an unreasonable failure to settle within policy limits. (See, e.g., *Camelot by the Bay Condominium Owners' Assn. v. Scottsdale Ins. Co.* (1994) 27 Cal.App.4th 33, 48-49 ["[T]here is no explicit requirement for bad faith liability that an

16

excess judgment is actually suffered by the insured, since the reasonableness analysis of settlement decisions is performed in terms of the probability or risk that such a judgment may be forthcoming in the future . . . . However, the actual excess judgment, if any, is highly relevant in any bad faith damages determination."].)

For example, *RLI* relied on *Safeco, supra,* 71 Cal.App.4th 782, which was similar to *Hamilton* in that it involved a stipulated judgment and an agreement not to execute the judgment against the insured. In that case, several teenagers were involved in the death of a driver. The driver's family sued the owners of the home where the teenagers had spent the day drinking before the incident that caused the driver's death; the defendants' auto insurer and homeowners' insurer both defended the lawsuit. (*Id*. at p. 785.) The plaintiffs and defendants stipulated to a judgment for $645,000, but the defendants' homeowners' insurer, Safeco Insurance Company of America, did not agree to the settlement. (*Id*. at pp. 786, 787.) The auto insurer agreed to pay $145,000, the plaintiffs agreed not to execute the remainder of the judgment against the defendants, and the defendants assigned their rights under the homeowners' policy to the plaintiffs. (*Ibid*.) The plaintiffs then sued the homeowners' insurer, Safeco, seeking the $500,000 limit of the homeowners' policy. Safeco moved for summary judgment, arguing that it had no obligation to pay the stipulated judgment. (*Ibid*.) The trial court denied the motion, and Safeco petitioned for a writ in the Court of Appeal.

The court held that because Safeco had provided a defense in the underlying litigation, the plaintiffs "had no authority to settle the matter without the consent of Safeco," so "the stipulated judgment between the [homeowners] and the [plaintiffs] is unenforceable against Safeco." (*Id*. at p. 787.) The court also stated that where "the insurer is providing a defense but merely refuses to settle, the insured has no immediate remedy. A cause of action for bad faith refusal to settle arises only after a judgment has been rendered in excess of the policy limits." (*Id*. at p. 788.) This is necessary, the court reasoned, because "[u]ntil judgment is actually entered, the mere possibility or probability of an excess judgment does not render the refusal to settle actionable." (*Ibid*.) The court concluded, "Because we find that Safeco was providing a defense to the

17

[defendants], Safeco was entitled to control the defense and to decide whether to litigate the [plaintiffs'] claim. If Safeco's decision to go to trial had resulted in a verdict above the policy limits, then Safeco's refusal to settle, if found to be unreasonable, could have rendered it liable for the full amount of the verdict. But until a litigated excess judgment is obtained, Safeco's refusal to settle is not actionable." (*Id*. at p. 789.)

Therefore, *Safeco*—like *Hamilton*—holds that a stipulated judgment entered into without the involvement of the insurer, coupled with an agreement not to execute the judgment on the insured, is not reliable proof of damages for the insurer's failure to settle within policy limits. Moreover, this case is unlike *Safeco* or *Hamilton* because here, Fireman's Fund consented to the excess settlement and contributed to it. This case does not present a situation where the parties settled without the insurer's consent while the insurer was actively defending the case, as in *Safeco* and *Hamilton*.[4]

Fireman's Fund also cites *Wolkowitz, supra,* 112 Cal.App.4th 154 in support of its argument that a judgment is a required element of a failure-to-settle claim. In *Wolkowitz*, a man installed a "'lift kit'" on his car and was subsequently injured when he lost control of the car; he sued Shamrock Tire, Etc., Inc., the lift kit maker. (*Id*. at p. 157.) Shamrock tendered its defense to its insurer, Redland Insurance Company, and Redland later refused an offer to settle the case within policy limits. (*Ibid*.) Shamrock then declared bankruptcy. The bankruptcy trustee and the injured driver reached an agreement that "expressly provide[d] that [the driver] had a $26,225,000 claim against the bankruptcy estate, and that the claim would be allowed (without objection by the trustee) as a general unsecured claim. It further provided that [the driver] would not seek any recovery from Shamrock, but would look solely to proceeds to be recovered from Redland." (*Id*. at pp.

---

[4] Another case with similar facts is *Doser v. Middlesex Mutual Ins. Co*. (1980) 101 Cal.App.3d 883, in which a passenger's heirs sued the estate of a pilot following a fatal small plane crash. The plaintiff heirs and the pilot's estate, without the involvement of the insurer, settled in an amount determined by plaintiffs' counsel, and the heirs agreed to release all claims against the estate. In exchange, the defendant estate assigned the heirs its rights to a bad faith action against the insurer. In the heirs' case against the insurer, the Court of Appeal held that the collusive settlement reached without the participation of the insurer could not support a damages claim against the insurer.

158-159.) The trustee then sued Redland, alleging bad faith for failure to settle the driver's case within policy limits. (*Id*. at p. 159.) Redland successfully demurred, and the trustee appealed.

The Court of Appeal, relying on *Hamilton,* stated, "The question here is whether the [bankruptcy case] order allowing the claim constitutes a judicial determination of Shamrock's liability that accurately reflects Shamrock's actual liability to [the injured driver] and provides a reliable basis to establish damages proximately caused by Redland's refusal to settle. (*Hamilton*, *supra*, 27 Cal.4th at pp. 725–727, 730.) We conclude that the clear answer to this question is that it does not." (*Wolkowitz*, *supra*, 112 Cal.App.4th p. 165.) The court continued, "Quite obviously, the agreement between [the driver] and the trustee was not premised on the expectation that Shamrock or the bankruptcy estate would ever pay [the driver's] claim, but rather entirely upon a potential recovery from Redland, Shamrock's insurer, which recovery would be shared in some agreed ratio. As with the 'good faith' settlement in *Hamilton*, *supra*, 27 Cal.4th at page 730, the bankruptcy court's order was not a judicial finding that Shamrock was actually liable to [the driver] in the agreed amount." (*Wolkowitz*, *supra*, 112 Cal.App.4th at p. 165.) The court concluded, "Since, as we have explained, the allowed claim can provide no reliable basis to establish damages in any amount, the complaint does not properly allege damages *resulting from the refusal to settle*. We therefore conclude that Redland's demurrer was properly sustained on the ground of a failure to state a cause of action." (*Id*. at p. 166, emphasis in original.) As in *Hamilton*, therefore, the focus of *Wolkowitz* was whether the parties' agreement was sufficient evidence of damages arising from a failure to settle. *Wolkowitz* does not hold that damages must take the form of a judgment rather than a settlement.

Fireman's Fund also relies on *Archdale, supra,* 154 Cal.App.4th 449, in which an 18-wheeler collided with two other vehicles. A driver of one of the vehicles sued the truck driver and his employer, who were insured by AIS. (*Id*. at p. 457.) AIS allegedly failed to accept multiple reasonable settlement offers within its $500,000 policy limit. (*Id*. at p. 455.) A jury trial resulted in a judgment of $1,269,000 against the insureds.

19

(*Ibid*.)  AIS paid $357,500 to the plaintiffs, which constituted the remainder of the policy limits after a settlement with another claimant involved in the same accident.  (*Id*. at p. 458.)  The plaintiffs, the truck driver, and driver's employer then sued AIS for breach of contract and breach of the duty of good faith and fair dealing.  (*Ibid*.)  The trial court granted AIS's motion for summary judgment based on the statute of limitations, and the appeal focused on when the cause of action against AIS accrued, and whether it was tolled by events in the underlying litigation.

The Court of Appeal stated, "A breach of the duty to settle within policy limits while the action is pending in the trial court presents only the possibility that a judgment might be rendered in excess of policy limits.  Even if the insurer rejects a settlement offer within policy limits, it is not subject to liability if it successfully defends the litigation and obtains a complete defense verdict or a judgment is rendered that is below the settlement offer or within policy limits.  The cause of action arises only upon entry of a judgment in excess of policy limits."  (*Archdale*, *supra*, 154 Cal.App.4th at p. 474.)  The court reasoned that "until the judgment is final it cannot be determined with certainty whether, and in what amount, the insured has been harmed."  (*Id*. at p. 478, citing *Hamilton*, *supra*, 27 Cal.4th at pp. 725-728.)  The court held that such claims are tolled until any appeal following the judgment is complete:  "Had AIS prevailed on [its appeal], the judgment would have been reversed, and a retrial could have potentially altered the jury's comparative negligence finding so as to reduce the liability of [the defendants] to the policy limit, or to a figure below that limit, or to zero."  (*Archdale*, *supra*, 154 Cal.App.4th at p. 478.)  The running of a limitations period was therefore tolled until the judgment was complete following appeal, to ensure that the amount of damages was determined and ascertainable.

Here, Fireman's Fund cites *Wolkowitz* and *Archdale* for the proposition that "a judgment is a required element of a failure to settle claim."[5]  We do not read *Wolkowitz*

---

[5] Fireman's Fund also cites *Finkelstein, supra,* 11 Cal.App.4th 926, saying that the "trial court granted the insurer's motion for summary judgment" based on the fact that the underlying claim was resolved by a settlement, rather than a judgment."  In fact, the

or *Archdale* as supportive of that statement. The issue in each case was whether the damages claimed by the plaintiffs were fixed and ascertainable, not whether the underlying cases had been litigated to judgment. The same was true in *Hamilton*, where the Court considered whether a stipulated judgment with a covenant not to execute was sufficient evidence of damages. The focus of these cases was whether the insured had incurred measurable damages—not whether those damages had been reduced to a judgment.

Fireman's Fund argues that "a conventional settlement between the parties, which is not approved by the court and does not result in even a nominal judgment, does not establish the damages required to settle a claim." It also argues that "[w]ithout a judgment, there is nothing to establish whether and to what extent the case was worth more than the primary limits." But whether the settlement will ultimately be sufficient to prove Ace American's damages is not at issue in this appeal.[6] Because this case is before us following a demurrer, issues of eventual proof are not relevant. "To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged." (*C.A. v. William S. Hart Union High School Dist*. (2012) 53 Cal.4th 861, 872.)

---

underlying action in *Finkelstein* settled for less than the policy limits, and the Court of Appeal held that the possibility of damages for failure to settle "never ripened into an actionable event." (*Id*. at p. 930.) The court did not hold that the fact of the settlement alone barred the claim.

[6] *Isaacson* stated that a settlement may be considered as evidence of damages: "[I]f an insurer wrongfully fails to provide coverage or a defense, and the insured then settles the claim, the insured is given the benefit of an evidentiary presumption. In a later action against the insurer for reimbursement based on a breach of its contractual duty to defend the action, a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability." (*Isaacson*, *supra*, 44 Cal.3d at p. 791.) *Hamilton* cautioned that even with court approval under Code of Civil Procedure section 877.6, a collusive settlement may not be sufficient evidence of damages. (*Hamilton, supra*, 27 Cal.4th at p. 722.) Thus whether the settlement ultimately will constitute sufficient evidence of damages is an issue for the trier of fact. Here, for purposes of a demurrer, Ace American has adequately alleged that it was damaged because it contributed to the settlement.

Ace American has alleged that Fireman's Fund unreasonably failed to settle the Franco action within policy limits, and that as a result, the eventual settlement of that case exceeded the policy limits. Ace American therefore has alleged that it was damaged in an ascertainable amount as a direct result of Fireman's Fund's failure to accept the Francos' reasonable, within-limits settlement offers. We see no persuasive reason to hold that either Warner Brothers or its assignee, Ace American, must suffer that loss with no remedy simply because the case reached an eventual settlement instead of being litigated through trial. Ace American's alleged damages are clear, liquidated, and certain, and Fireman's Fund participated in reaching the settlement. These facts set this case apart from *Hamilton*, *Safeco*, and *Wolkowitz*. As the *Fortman* court aptly noted, "Courts easily [can] distinguish equitable subrogation cases with facts suggesting a collusive settlement from cases like this one in which the excess insurer actually paid a settlement." (*Fortman*, *supra*, 221 Cal.App.3d at p. 1402.)

### 4. Non-case authorities

Fireman's Fund also cites a California practice guide, which opines that "*RLI seems correct and Fortman seems incorrect because Excess Insurer is subrogated to Insured's* rights against Primary Insurer (see ¶8:338) . . . *and, as long as Primary Insurer is defending the action* (even under a reservation of rights), Insured has *no action* for unreasonable refusal to settle until an excess judgment has been rendered." (Croskey et al., California Practice Guide, Insurance Litigation, ¶ 8:345.3 [emphasis in original], citing *Safeco*, *supra*, 71 Cal.App.4th at p. 788, and *Hamilton*, *supra*, 27 Cal.4th at p. 725.) Fireman's Fund also notes that CACI No. 2334, the jury instruction for bad faith refusal to accept a reasonable settlement within policy limits, includes as an element, "That a monetary judgment was entered against [*name of plaintiff*] for a sum greater than the policy limits."

These simple summaries, however, fall short in that they cast the issue in dualistic terms: either the insurer settled the case for a reasonable amount within primary policy limits, or the case went to trial and ended with an excess judgment against the insured. Cases are much more likely to settle than proceed to trial, however. The most recent data

22

available from the Superior Courts of California show that in 2015, 37,502 cases were disposed of following trial, while 135,918 cases were disposed of before trial—thus, more than 78 percent of cases were resolved before trial.  (See Judicial Counsel of California, 2015 Court Statistics Report, p. xv, available at http://www.courts.ca.gov/12941.htm.)  Even one of the earliest equitable subrogation cases, *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, noted that "[i]t is common knowledge that a large percentage of the claims covered by insurance are settled without litigation and that this is one of the usual methods by which the insured receives protection."  (50 Cal.2d at p. 659.)  Indeed, California statutes and case law encourage multiple settlement offers as a case develops.  (See, e.g., *T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 281 ["the policy of encouraging settlements is best promoted by making section 998 offers revocable" because a "[p]arty is more likely to make an offer pursuant to section 998 if that party knows that the offer may be revised if circumstances change or new evidence develops. . . .  The more offers that are made, the more likely the chance for settlement."].)  To cast the issue in dualistic terms—either a reasonable settlement within primary policy limits or a fully litigated excess judgment— fails to account for cases like this one, where multiple settlement opportunities occur, and an unreasonable refusal to settle early in a case may result in measurable damages to the insured or excess insurer in the form of a later excess settlement.

### 5.    Non-California cases

Cases from other jurisdictions support our conclusion.  The Ninth Circuit, in an unpublished decision, recently considered whether an excess settlement could serve as the basis for an equitable subrogation action.[7]  (*RSUI Indem. Co. v. Discover P & C Ins. Co.* (9th Cir., May 3, 2016, No. 14-15825) ___Fed.Appx. ___, 2016 WL 1745119.)  The court considered the conflict between *Fortman* and *RLI*, and concluded that "the rule

---

[7] Unpublished federal opinions have persuasive value, and are not subject to California Rules of Court, rule 8.1115, which governs citation to unpublished California opinions.  (*Harris v. Investor's Business Daily, Inc*. (2006) 138 Cal.App.4th 28, 34; *Haligowski v. Superior Court* (2011) 200 Cal.App.4th 983, 990.)

announced in *Fortman* is more likely to be adopted by the California Supreme Court because it more faithfully applies California insurance law." (*Id.* at p. *2.) The Ninth Circuit discussed *Hamilton*'s distinction between a settlement to which an insured or excess insurer contributed, and a collusively inflated settlement or stipulated judgment to which an insured or excess insurer did not contribute. The Ninth Circuit noted that *Fortman* recognized this "critical distinction," and stated that *Fortman* "applied this principle to disputes between contributing excess insurers and primary insurers: when an excess insurer, faced with a primary insurer's unreasonable refusal to pay a settlement demand within the policy limits, actually contributes payment to conclude settlement, it may state a claim for equitable subrogation despite the absence of a litigated excess judgment. [*Fortman*,] 271 Cal.Rptr. at 119. *Fortman*'s conclusion is consistent with *Hamilton* and *Issacson*. The collusive risk that *Hamilton* wished to avoid is not present when an excess insurer contributes to settle a case on behalf of an insured." (*Id.* at p. *3.)

The Seventh Circuit, in an opinion by Judge Posner, also relied on *Fortman* in rejecting an argument that a judgment is required in an equitable subrogation action by an excess insurer: "Country Mutual [the primary insurer] argues that a breach of the insurer's duty to act in good faith in settlement negotiations is not actionable unless, by refusing to settle, the insurer precipitates a trial that results in the entry of a judgment against the insured. This is not a ridiculous argument. If the temptation at which the duty is aimed is the temptation to gamble with the insured's money, it is not obviously a violation merely to dawdle in settling until the golden moment of opportunity passes. But though the case law is sparse, we are pretty confident that the line should not be drawn here. *Fortman v. Safeco Ins. Co.*[, *supra*,] 221 Cal.App.3d 1394). The basic temptation of the insurer comes from the fact that its liability is capped at the policy limits, so that it can shift many of the losses of a risky strategy to the insured (or any excess insurer). It may dawdle in settling, hoping to drive a harder bargain and knowing that if it fails and the case goes to trial and it loses big, still most of the loss will fall on the insured or on an excess insurer rather than on itself. The fact that on the eve of trial it may throw in the towel because it sees no hope of winning should not excuse it from

having failed to settle earlier on better terms if it would have settled earlier on those terms had all the risks of loss lain on itself." (*Twin City Fire Ins. Co. v. Country Mut. Ins. Co.* (7th Cir. 1994) 23 F.3d 1175, 1181.) We agree with this reasoning.

In addition, most other jurisdictions that have considered this issue have found that an insured or excess insurer that contributes to a settlement can pursue the primary insurer for failing to accept reasonable settlements within primary limits. (See, e.g., *St. Paul Fire & Marine Ins. Co. v. Liberty Mutual Insurance Co.* (2015) 135 Haw. 449, 456 [in a case involving a post-verdict settlement in excess of primary limits, "the public interest in encouraging reasonable settlement is best served by permitting an excess insurer to seek relief under the doctrine of equitable subrogation"]; *Scottsdale Insurance Company v. Addison Insurance Company* (Mo. 2014) 448 S.W.3d 818, 831-832 [where the underlying case settled, "an excess insurer who pays a third-party claim on behalf of its insured after a primary insurer refuses in bad faith to settle the claim has a right to equitable subrogation to obtain the amount paid from the primary insurer"]; *American Centennial Ins. Co. v. Canal Ins. Co.* (Tex. 1992) 843 S.W.2d 480, 483 [an excess carrier may bring an equitable subrogation action against the primary carrier in a case that settles in excess of the limits of the primary policy]; *Maine Bonding & Cas. Co. v. Centennial Ins. Co.* (1985) 298 Or. 514, 525 [allowing equitable subrogation by an excess insurer following a settlement where the claimant "came to insist upon a higher settlement figure than he would have if the claim had been handled more expeditiously"]; *Continental Cas. Co. v. Reserve Ins. Co.* (1976) 307 Minn. 5, 13-14 [holding that a judgment in the underlying action is not required in an action by an excess insurer against a primary insurer for failure to accept a reasonable settlement offer]; see also Allan D. Windt, Insurance Claims and Disputes § 9:2 (6th ed., 2013) ["[A] cause of action for a carrier's breach of its duty to settle should accrue when an excess judgment is entered or an excess settlement agreement is entered into, at which time the insured will have been damaged by reason of the earlier failure to settle."].)

6. Policy of encouraging settlement

"California's public policy is to encourage settlement." (*Tower Acton Holdings v. Los Angeles County Waterworks Dist. No. 37* (2002) 105 Cal.App.4th 590, 602.) Fireman's Fund argues that if California courts follow *Fortman* rather than *RLI*, settlements will be discouraged because "[p]rimary insurers would be hesitant to participate with excess insurers in settlements, for fear of the excess insurers turning around and suing them." However, our holding places no additional duties upon primary insurers that they do not ordinarily have. Primary insurers already have the duty to accept reasonable settlement offers within policy limits, and liability for resulting damages when they breach that duty. Moreover, our decision protects insureds, because insurers whose mishandling of settlement offers causes damages will be liable for the losses they cause. The *RLI* rule, on the other hand, leaves insureds without recourse when primary insurers mishandle reasonable early settlement offers, resulting in later excess settlements. Moreover, "when a primary insurer breaches its good-faith duty to settle within policy limits, it imperils the public and judicial interests in fair and reasonable settlement of lawsuits." (*Continental Cas. Co. v. Reserve Ins. Co.* (1976) 307 Minn. 5, 9.)

In sum, we conclude that in an equitable subrogation action, "an excess insurer which has settled and discharged the insured's liability may recover from the primary insurer an amount in excess of the primary insurer's policy limits if the excess insurer can prove the primary insurer's unreasonable refusal to settle within its policy limits resulted in loss to the excess insurer in an amount in excess of the policy limits of the primary insurer it would not otherwise have had." (*Northwestern Mut. Ins. Co. v. Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1050.) An excess judgment is not a required element of a cause of action for equitable subrogation or breach of the duty of good faith and fair dealing; where the insured or excess insurer has actually contributed to an excess settlement, the plaintiff may allege that the primary insurer's breach of the duty to accept reasonable settlement offers resulted in damages in the form of the excess settlement.

We therefore reverse the judgment sustaining Fireman's Fund's demurrer, and remand for further proceedings.

## DISPOSITION

The judgment is reversed.  Ace American shall recover its costs on appeal.

## CERTIFIED FOR PUBLICATION

COLLINS, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

27